## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

MARKUS BLECHNER, Individually and on
Behalf of All Others Similarly Situated,

              Plaintiff,

      v.

DAIMLER-BENZ AG, DAIMLERCHRYSLER
AG, JÜRGEN SCHREMPP, ECKHARD
CORDES, MANFRED GENTZ, JÜRGEN
HUBBERT, MANFRED BISCHOFF, KURT
LAUK, KLAUS MANGOLD, HEINER
TROPITZSCH, KLAUS-DIETER
VOHRINGER, DIETER ZETSCHE and
THOMAS SONNENBERG,

              Defendants.

------------------------------------------------------------x

Civil Action No. 04-331 (JJF)

## OPENING BRIEF OF DAIMLERCHRYSLER AG AND DAIMLER-BENZ AG IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

OF COUNSEL:
Jonathan J. Lerner
Lea Haber Kuck
Joseph N. Sacca
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Dated: March 1, 2005

Thomas J. Allingham II (#0476)
Robert S. Saunders (#3027)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Defendants DaimlerChrysler
AG and Daimler-Benz AG

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A.    The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      1.    The Foreign Investor Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      2.    The Foreign Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B.    Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      1.    The Individual and Original Class Action Complaints . . . . . . . . . . . . . . 6

      2.    The Class Certification Decision . . . . . . . . . . . . . . . . . . . . . . . . . 8

      3.    The Class Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

C.    The Current Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE
    FOREIGN INVESTORS' CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.    The Securities Laws Do Not Convey Subject Matter Jurisdiction over
        The Claims of the Foreign Investors . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B.    The Judicially Created Tests Provide No Basis for Asserting Subject
        Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      1.    The Foreign Investors Do Not Satisfy the Effects Test . . . . . . 13

      2.    The Foreign Investors Do Not Satisfy the Conduct Test . . . . . . 14

II.    THE COURT SHOULD DECLINE JURISDICTION ON GROUNDS OF
    INTERNATIONAL COMITY AND FOREIGN POLICY . . . . . . . . . . . . . . . . . 19

i

III.   THE FOREIGN INVESTORS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

A.   The Applicable Limitations Periods . . . . . . . . . . . . . . . . . . . . . . . . . 24

B.   The Limitations Period Expired Prior to Commencement of this Action  26

C.   The Foreign Investors' Claims Have Not Been Tolled . . . . . . . . . . . . . 27

IV.   PLAINTIFFS DO NOT AND CANNOT STATE A CLAIM UNDER THE EXCHANGE ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

A.   As this Court Previously Ruled, the Foreign Investors' Channel Stuffing Allegations Fail to State a Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

1.   The Foreign Investors' Channel Stuffing Allegations Fail to Identify Any Actionable Misstatements or Omissions . . . . . . . . 28

2.   The Complaint Alleges No Facts Giving Rise to a Strong Inference of Scienter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

3.   The Foreign Investors' Channel Stuffing Claim is Time-Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

B.   Plaintiffs Have Not and Cannot State a Section 14(a) Claim as A Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

C.   The "Merger of Equals" Allegations Fail to State a Claim . . . . . . . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# TABLE OF AUTHORITIES

CASES

PAGE(S)

In re Alpharma, Inc. Sec. Litig., 372 F.3d 137 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . 29

American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974) . . . . . . . . . . . . . . . 27

Asplundh Tree Expert Co. v. National Labor Relations Board, 365 F.3d 168 (3d
Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Baan Co. Sec. Litig., 103 F. Supp. 2d 1, 11 (D.D.C. 2000) . . . . . . . . . . . . . . . . 14

Batchelder v. Kawamoto, 147 F.3d 915 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 32

Bersch v. Drexel Firestone, Inc., 519 F.2d 974 (2d Cir. 1975) . . . . . . . . . . . . . . . 13, 14

Crown, Cork & Seal Col, Inc. v. Parker, 462 U.S. 345 (1983) . . . . . . . . . . . . . . . . . . 27

In re Cybershop.com Sec. Litig., 189 F. Supp. 2d 214, (D.N.J. 2002) . . . . . . . . . . . . 33

In re DaimlerChrysler Sec. Litigation, 216 F.R.D. 291 (D. Del. 2003) . . . . . . . . . 1, 9, 27

In re Enron Corp. Security, Derivative & ERISA Litigation, No. MDL-1446, Civ.
A. H-01-3624, 2004 WL 405886, at *9 (S.D. Tex. Feb. 25, 2004) . . . . . . . . . . . 26

In re Enterprise Mortgage Acceptance Co., Inc. Security Litigation, 391 F.3d 401
(2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

F. Hoffman-La Roche Ltd. v. Empagran S.A., 124 S. Ct. 2359
(2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 11, 12, 20, 21, 23

Foss v. Bear Stearns & Co. Inc., 394 F.3d 540 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . 25

Froese v. Staff, No. 02 CV 5744, 2003 WL 21523979 (S.D.N.Y. July 7, 2003) . . . . . . 17

Glaser v. Enzo Biochem, Inc., 303 F. Supp. 2d 724, 732-34 (E.D. Va. 2003) . . . . . . . . 25

GSC Partners CDO Fund v. Washington, 368 F.3d 228 (3d Cir. 2004) . . . . . . . . . . . . 29

Ieradi v. Mylan Laboratories, Inc., 230 F.3d 594 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . 4

In re Ikon Office Solutions, Inc. Sec. Litig., 131 F. Supp. 2d 680, 687 (E.D. Pa.
2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Interbrew S.A. v. EdperBrascan Corp., 23 F. Supp. 2d 425, 429 (S.D.N.Y. 1998) . . . . . 15

Kaufman v. Campeau Corp., 744 F. Supp. 808 (S.D. Ohio 1990)  . . . . . . . . . . . . . 17, 18

Koal Industries Corp. v. Asland, S.A., 808 F. Supp. 1143 (S.D.N.Y. 1992) . . . . . . . . . 14

Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991) . . . . . . . 24

Lieberman v. Cambridge Partners, L.L.C., No. Civ. A. 03-2317, 2004 WL
       1396750 (E.D. Pa. June 21, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Lum v. Bank of America, 361 F.3d 217 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 4

Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287 (3d Cir. 1979) . . . . . . . . 19

McNamara v. Bre-X Minerals Ltd., 32 F. Supp. 2d 920, 923 (E.D. Tex. 1999) . . . . 14,18

In re NAHC, Inc. Security Litigation, 306 F.3d 1314 (3d Cir. 2002)  . . . . . . . . . . . . . . 33

Nathan Gordon Trust v. Northgate Exploration, Ltd., 148 F.R.D. 105 (S.D.N.Y.
       1993)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Nazi Era Cases Against German Defendants Litig., 129 F. Supp. 2d. 370,
       386 (D.N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Paraschos v. YBM Magnex Int'l, Inc., 130 F. Supp. 2d 642, 645 (E.D. Pa.
       2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

Robbins v. Banner Industrial, Inc., 285 F. Supp. 758 (S.D.N.Y. 1966)  . . . . . . . . . . . . 31

SEC v. Kasser, 548 F.2d 109 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Torres v. Southern Peru Copper Corp., 965 F. Supp. 899 (S.D. Tex. 1996) . . . . 20, 21, 23

Tracinda Corp. v. DaimlerChrysler AG,197 F. Supp. 2d 42 (D.
       Del. 2002)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 10, 28, 29, 30

Tri-Star Farms, Ltd. v. Marconi, PLC, 225 F. Supp. 2d 567, 572
       (W.D. Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 15, 17, 18

Tse v. Ventana Med. System, Inc., 297 F.3d 210 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . 33

In re Vivendi Universal, S.A. Security Litigation, No. 02 Civ. 5571(HB), 2003
       WL 22489764 (S.D.N.Y. Nov. 3, 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

iv

<u>Yang v. Odom</u>, 392 F.3d 97 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

<u>Zoelsch v. Arthur Andersen & Co.</u>, 824 F.2d 27 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . 15

<u>STATUTES</u>

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 804, 116 Stat. 745 . . . . . . . . . . . 24

17 C.F.R. § 240.3b-4(c) (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

15 U.S.C. § 77M . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

15 U.S.C. § 78u-4(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

<u>OTHER AUTHORITIES</u>

Brief of the Federal Republic of Germany as Amicus Curiae in Support of Petition
    for Writ of Certiorari, <u>F. Hoffman-La Roche Ltd. v. Empagran, S.A.</u>,
    124 S. Ct. 2359 (No. 03-724) (2004), <u>available at</u> 2003 WL 22896686 . . . . . . . 23

Restatement (Third) of Foreign Relations Law of the United States § 403
    (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22, 23

Defendants Daimler-Benz AG ("Daimler-Benz") and DaimlerChrysler AG ("DaimlerChrysler") (collectively, "defendants") respectfully submit this brief in support of their motion to dismiss the Class Action Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b), Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act") and principles of international comity.

## NATURE OF THE CASE

In the prior litigation before this Court challenging the 1998 merger of Daimler-Benz and Chrysler Corporation ("Chrysler") that formed DaimlerChrysler (the "Merger"), the Court refused to certify a proposed class that included "foreign investors" because of the "practical difficulties involved in maintaining" such a class, including issues of class management and damages suffered by purchasers on foreign exchanges. See In re DaimlerChrysler Sec. Litig., 216 F.R.D. 291, 301 (D. Del. 2003). Notwithstanding the Court's prior ruling, this action is brought by Austrian investment firms who acquired shares of DaimlerChrysler, a German stock corporation, on German exchanges on behalf of a purported class of investors who by definition are not United States residents or citizens and who acquired DaimlerChrysler stock on or through exchanges outside of the United States (the "Foreign Investors").

Plaintiffs make allegations that essentially duplicate (and suffer from the same infirmities as) the claims previously asserted, but the difference is that no valid reason exists for these Foreign Investors to pursue to their claims in this Court. Indeed, any United States interest in this matter was fully satisfied in February 2004 when Judge Jordan approved the settlement of the consolidated class action which included a class of all DaimlerChrysler shareholders who were either United States citizens or residents or

obtained their DaimlerChrysler shares on United States securities exchanges (the "Original Class").

In addition to being filed in an inappropriate forum, all of the claims asserted by the Foreign Investors are by any measure untimely. See infra at pp. 24-26, 30-31. By their own admissions, the Foreign Investors were on notice of their claims no later than November 2000, more than three and half years before they filed them.

In short, this case does not belong in this Court and should be dismissed with prejudice.

## SUMMARY OF THE ARGUMENT

The Complaint should be dismissed for the following reasons:

1.    The Court lacks subject matter jurisdiction over this action because the federal securities laws do not encompass the claims of the Foreign Investors. See infra at pp. 10-18. The extra-territorial reach of the federal securities laws does not and should not extend to class action claims by foreign investors against foreign defendants where the securities in question were acquired on or though foreign exchanges relating to an alleged scheme purportedly planned and, for the most part, carried out in Germany.

2.    Even if subject matter jurisdiction existed – and it does not – the Court should nevertheless decline to exercise jurisdiction based on principles of international comity. See infra at pp. 19-24. No valid reason exists for American law to supplant, for example, Germany's own determination of how best to protect German investors from allegedly fraudulent activity by a German stock corporation. See F. Hoffman-La Roche Ltd. v. Empagran S.A., 124 S. Ct. 2359, 2367 (2004). Indeed, to do so would be to

2

engage "in an act of legal imperialism." See id. at 2369. Because the exercise of jurisdiction here would unreasonably interfere with the sovereign authority of the nations where the Foreign Investors reside and the subject transactions occurred, the Court should decline to assert jurisdiction (even if it finds jurisdiction exists) under principles of international comity. See id. at 2366.

3.      The Foreign Investors' federal securities claims are barred by the statute of limitations under either the one-year/three-year limitations scheme in place before the passage of the Sarbanes-Oxley Act or the Sarbanes-Oxley Act's longer two-year/five-year period of limitations. See infra at pp. 24-26. Under the circumstances here, the statute of limitations was not tolled during the pendency of the action brought by the Original Class. See infra at p. 27. Because the Foreign Investors plead that defendants first "began to disclose" the alleged fraud on October 30, 2000 (Compl. ¶ 88) – well more than two years before the Foreign Investors filed the Complaint – their Complaint is untimely.

4.      The Foreign Investors also fail to state a claim because: (1) their "channel stuffing" claims are based on allegations identical to those made by the Original Class, which this Court dismissed for failure to state a claim (see Tracinda Corp. v. DaimlerChrysler AG, 197 F. Supp. 2d 42, 77-85 (D. Del. 2002)); (2) Section 14(a) of the Exchange Act does not apply as a matter of law to foreign issuers such as DaimlerChrysler and Daimler-Benz (see infra at pp. 31-32); (3) the Foreign Investors do not and cannot plead loss causation because DaimlerChrysler's stock price actually increased when the allegedly fraudulent scheme was purportedly revealed (see infra at pp.

32-33); and (4) the Foreign Investors' "merger of equals" claims suffer from the same fatal flaws as the claims previously asserted by the Original Class (see infra at p. 32).

## STATEMENT OF FACTS[1]

### A.    The Parties

#### 1.    The Foreign Investor Plaintiffs

Co-Lead Plaintiff Capital Invest, die Kapitalanlagegesellschaft der Bank Austria Creditanstalt Gruppe GmbH is an Austrian investment fund management company that allegedly acquired shares of DaimlerChrysler stock on a German exchange during the putative class period. See D.I. 5, 6. Likewise, co-Lead Plaintiff Erste-Sparinvest Kapitalanlagegesellschaft m.b.H. is an Austrian mutual fund manager that allegedly acquired shares of DaimlerChrysler stock on the Frankfurt stock exchange following the Merger. See D.I. 12.[2]

Lead Plaintiffs purport to represent a putative class of "all persons and entities who are not citizens or residents of the United States, and purchased or otherwise acquired the securities of DaimlerChrysler between November 17, 1998 and November

---

[1]    This Statement of Facts is drawn from the allegations of the Complaint and documents that are referred to or quoted in the Complaint, were required to be and were filed with the Securities and Exchange Commission and/or were otherwise part of the public record and available to the plaintiffs at the time the Complaint was filed. The Court may consider these documents in the context of this motion. See Lum v. Bank of America, 361 F.3d 217, 221 n.3 (3d Cir. 2004); Ieradi v. Mylan Labs, Inc., 230 F.3d 594, 600 n.3 (3d Cir. 2000). These documents are annexed as exhibits to the Declaration of Thomas J. Allingham II, executed March 1, 2005, filed herewith, and cited herein as "Exh. ___."

[2]    The Complaint was filed by Markus Blechner, who purchased his shares on a Swiss exchange. (Compl. ¶ 17) Blechner did not seek appointment as lead plaintiff.

4

17, 2000 inclusive, including those former shareholders of Chrysler who surrendered their Chrysler shares in connection with the Merger of Chrysler by and into DaimlerChrysler on or about November 17, 1998, on or through a securities exchange not based in the United States. . . ."  (Compl. ¶ 38)

The putative class consists of two groups: (1) foreign investors who acquired Chrysler shares on foreign exchanges and exchanged those shares for shares of DaimlerChrysler in connection with the Merger (the "Exchangers") and (2) foreign investors who acquired DaimlerChrysler shares on foreign exchanges during the period from November 17, 1998 through November 17, 2000 (the "Acquirors").  Because Chrysler stock was not widely held outside of the United States, the putative class is overwhelmingly made up of individuals from the second group – i.e., the Acquirors.

2.    **The Foreign Defendants**

Prior to the Merger, defendant Daimler-Benz was a stock corporation organized and existing under the laws of Germany, with its principal place of business located in Stuttgart, Germany.  (Compl. ¶ 18)  Defendant DaimlerChrysler is a stock corporation organized and existing under the laws of Germany.[3]  (Id. ¶ 19)

DaimlerChrysler was formed through a series of transactions in which Chrysler and Daimler-Benz were combined pursuant to the terms of a Business Combina-

---

[3]    The Complaint also names Jürgen Schrempp, Eckhard Cordes, Jürgen Hubbert, Manfred Bischoff, Kurt Lauk, Klaus Mangold, Heiner Tropitzsch, Klaus-Dieter Vohringer, Dieter Zetsche and Thomas Sonnenberg as individual defendants. Those individuals have not yet been served and the parties, with approval of the Court, have agreed that no further attempts will be made to serve such individuals until the later of (i) denial, in whole or in part, of this motion or (ii) resolution of the appeal in Bertelsmann AG v. The President of the Regional High Court, Düsseldorf, pending before the Constitutional Court in Germany. D.I. 50.

tion Agreement (the "BCA") entered into by the two companies, and in which their shareholders exchanged their respective shares for shares in the new company. The new company's shares were listed on several foreign exchanges, under offering prospectuses filed with those foreign exchanges in accordance with the individual regulations of each exchange. These offering documents were separate and distinct from the prospectus and registration statement relied upon by plaintiffs in the Complaint. See, e.g., Exh. A. During the putative class period, DaimlerChrysler shares were traded on stock exchanges throughout the world, including those in Great Britain, Canada, France, Germany, Japan and Switzerland. (Compl. ¶ 39)

Since the Merger, the percentage of DaimlerChrysler shares held by investors outside the United States has steadily increased. As stated in the Company's annual report for fiscal year 1998, in mid-March 1999 – only four months after the Merger – approximately 25% of the Company's shares were held by United States-based individuals and institutional investors, whereas European investors held more than half the shares.[4] See Exh. B at 19. By the end of fiscal year 2000, ownership by United States investors had declined to approximately 17%, while European ownership had increased to approximately 75%. See Exh. C at 9.

## B.    Procedural Background

### 1.    The Individual and Original Class Action Complaints

In November 2000, Tracinda Corporation, formerly one of Chrysler's largest shareholders, filed a complaint in this Court against DaimlerChrysler, Daimler-

---

[4]    It follows that the remainder of the Company's shares were held by investors outside of the United States and Europe.

Benz and certain individuals alleging fraud in the solicitation of its vote in favor of the Merger.  Tracinda D.I. 1.[5]  The gravamen of Tracinda's claim was that the business combination between Chrysler and Daimler-Benz was a takeover of Chrysler and not a "merger of equals" as represented.

Shortly thereafter, approximately 23 putative class actions (and one individual action) were filed based on the same factual allegations.  The class action complaints were filed on behalf of a class consisting of both Exchangers and Acquirers.  The first class complaint on behalf of the Exchangers was filed on or about November 27, 2000 and the first class complaint on behalf of the Acquirers was filed on or about December 1, 2000.

On April 9, 2001, the lead plaintiffs for what was ultimately certified as the Original Class filed a First Amended Consolidated Class Action Complaint (the "Original Class Complaint.")  Orig. D.I. 41.[6]  The Original Class Complaint was brought on behalf of both the Exchangers and the Acquirers and contained the same "merger of equals" allegations made by Tracinda, as well as allegations of post-Merger "channel stuffing."

On March 22, 2002, the Court granted defendants' motion to dismiss the Original Class Complaint for failure to meet the pleading requirements of the Exchange

---

[5]    References to docket entries from the Tracinda action, Tracinda Corp. v. DaimlerChrysler AG, et al., Civil Action No. 00-984, are cited herein as "Tracinda D.I. __"

[6]    References to docket entries from the original consolidated action, In re DaimlerChrysler AG Securities Litigation, Civil Action Nos. 00-993/00-984/01-004-JJF, are cited herein as "Orig. D.I. __."

7

Act and failure to state a claim based on "channel stuffing."  See Tracinda, 197 F.

Supp.2d at 85-86.  Thereafter, on April 5, 2002, the lead plaintiffs on the Original Class

Complaint moved, only as to their merger of equals claims, for reconsideration or,

alternatively, leave to file a second amended complaint. Orig. D.I. 120.  This Court

granted the motion for leave to amend and, on May 14, 2002, the lead plaintiffs filed a

Second Amended Consolidated Class Action Complaint, which did not contain any of the

"channel stuffing" allegations. Orig. D.I. 156.

### 2.    The Class Certification Decision

On October 4, 2002, the lead plaintiffs filed a motion for class certifica-

tion. Orig. D.I. 311.  In opposing the motion, defendants argued, among other things, that

for numerous reasons any certified class should be limited to domestic investors.  Orig.

D.I. 466.

On June 11, 2003, the Court granted the class certification motion, but

specifically excluded foreign investors:

> It appears to the Court that there are a significant number of foreign
> investors in this case, which the Lead Plaintiffs seek to include in their
> proposed class.  The Court is aware of the practical difficulties involved in
> maintaining a class comprising foreign investors.  Further, the Court
> observes that Lead Plaintiffs have not adequately responded to Defendants'
> concerns regarding the issues of class management and damages suffered
> by purchasers on foreign exchanges.  However, in the Court's view, the
> appropriate way in which to address the concerns related to foreign inves-
> tors is not to deny class certification, but to certify a class comprising only
> domestic investors.  Accordingly, the Court will certify the class but
> exclude any foreign investors from it.

In re DaimlerChrysler Sec. Litig., 216 F.R.D. at 301. The Court, therefore, certified the Original Class comprised of both domestic Exchangers and domestic Acquirers, while excluding any "foreign investors." Id.

### 3.    The Class Settlement

On September 29, 2003, defendants entered into a Stipulation of Settlement (the "Settlement") with the Original Class, which did not include "foreign investors." Orig. D.I. 773. The Settlement defined "foreign investors" as "all Persons . . . who purchased or acquired their shares of Chrysler and/or DaimlerChrysler on or through a securities exchange not based in the United States, unless such Person is a citizen or a resident of the United States." Id. at 10.

Judge Jordan approved the Settlement on February 5, 2004, and the case was dismissed. Orig. D.I. 971.

### C.    The Current Complaint

On May 24, 2004, almost one year after the Court issued its opinion on class certification, the Complaint was filed on behalf of the Foreign Investors who were carved out of the Original Class and thus were not part of the Settlement.

The factual allegations of the Complaint are almost identical to those previously made by the Original Class. Like the Original Class, the Foreign Investors contend defendants fraudulently concealed the true nature of the Merger – i.e., that the business combination was a takeover and not a "merger of equals" as represented. (Compl. ¶ 8)

9

The Complaint also contains allegations of "channel stuffing" that mirror the "channel stuffing" allegations made by the Original Class and dismissed by this Court for failure to state a claim. Like the Original Class, the Foreign Investors assert DaimlerChrysler falsely painted too rosy a picture of its anticipated sales and revenues for year 2000 so as to "conceal" the alleged takeover of Chrysler. (Id. ¶ 94)  This claim is premised on the allegation that defendants artificially inflated revenues and earnings by prematurely recognizing income from the sale of automobiles DaimlerChrysler "pushed out to its dealers" and which "far exceeded demand." (Id. ¶ 93)

The Foreign Investors' sole "support" for their "channel stuffing" claim consists of a May 5, 2001 Forbes articles in which a "former Chrysler Executive" allegedly stated "Chrysler's immediate troubles stem not so much from a faltering economy but from a spectacularly ill-timed push by Schrempp to pump up earnings early last year." (Id. ¶ 95)  Significantly, the Court has already found that this article, on which the Original Class also primarily relied for its channel stuffing allegations, "does not support [the] allegation that the alleged channel stuffing was part and parcel of Defendants' alleged scheme to take control of Chrysler." Tracinda, 197 F. Supp. 2d at 84.

## ARGUMENT

## I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE FOREIGN INVESTORS' CLAIMS.

All of the Foreign Investors claims allege violations of the federal securities laws. Because the securities laws do not provide for the exercise of extraterritorial jurisdiction in the circumstances here, this Court should dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim.

A.     **The Securities Laws Do Not Convey Subject Matter Jurisdiction over the Claims of the Foreign Investors.**

The extraterritorial application of a statute is a matter of statutory construction. Asplundh Tree Expert Co. v. NLRB, 365 F.3d 168, 173 n.4 (3d Cir. 2004). "'[I]t is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" Id. at 173 (quoting EEOC v. Arabian American Oil Co., 499 U.S. 244, 248 (1991) (internal quotations omitted)). This canon of statutory construction "'serves to protect against unintended clashes between our laws and those of other nations which could result in international discord.'" Id. In applying this principle, courts must "'assume that Congress legislates against the backdrop of the presumption against extraterritoriality.'" Id. Thus, unless the "'affirmative intention of Congress is clearly expressed,'" it must be presumed Congress "'is primarily concerned with domestic conditions.'" Id.

The Supreme Court recently further expounded on this principle in F. Hoffman-La Roche Ltd. v. Empagran S.A., 124 S. Ct. 2359 (2004), in which it considered the extraterritorial reach of the Foreign Trade Antitrust Improvements Act of 1982 over the claims of foreign entities alleging antitrust injury as a result of a global price-fixing conspiracy. The Court reiterated that any ambiguity as to the extraterritorial reach of federal statutes should be interpreted "to avoid unreasonable interference with the sovereign authority of other nations." Id. at 2366. As the Supreme Court reasoned:

> This rule of statutory construction cautions courts to assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws. It thereby helps the potentially conflict-

11

ing laws of different nations work together in harmony – a harmony particularly needed in today's highly interdependent commercial world.

Id. The Court posed the rhetorical question: "Why should American law supplant, for example, Canada's or Great Britain's or Japan's own determination about how best to protect Canadian or British or Japanese customers from anticompetitive conduct engaged in significant part by Canadian or British or Japanese or other foreign companies?" Id. at 2367.

This general rule of statutory construction is equally applicable to the federal securities laws, which are silent regarding the issue of extraterritorial jurisdiction.[7] See Tri-Star Farms Ltd. v. Marconi, PLC, 225 F. Supp. 2d 567, 572 (W.D. Pa. 2002). Here, United States securities laws should not supplant the determination of the sovereigns of Germany or Austria or Great Britain as to how best to protect German or Austrian or British citizens from alleged securities fraud relating to securities traded on exchanges in those countries and, in the case of Germany, allegedly engaged in by corporations formed under German law.[8]

Because no "affirmative intention" of extraterritoriality is expressed in the securities laws, and ambiguous statutes should be construed to "avoid unreasonable interference with the sovereign authority of other nations," F. Hoffman-La Roche, 124 S.

---

[7]    The legislative history of the Exchange Act suggest no intent by Congress to extend the reach of the Act to investors outside of the United States. See SEC v. Kasser, 548 F.2d 109, 114 n.21 (3d Cir. 1977).

[8]    Issues of international comity are addressed more fully below. See infra pp. 19-24.

Ct. at 2366, the Court should find that the securities laws do not provide it with subject matter jurisdiction to adjudicate the claims of the Foreign Investors.

### B.  The Judicially Created Tests Provide No Basis for Asserting Subject Matter Jurisdiction.

Despite the presumption against extraterritorial application and the absence of any explicit statutory authority to extend jurisdiction over the claims of foreign plaintiffs who purchased securities on foreign exchanges, some courts have nevertheless judicially extended the application of the securities laws to cover – in certain narrow circumstances – injuries sustained by foreigners with respect to purchases on foreign exchanges.  See Tri-Star Farms, 225 F. Supp. 2d at 572-73 (citing Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 985 (2d Cir. 1975)).  These courts have created two tests to determine if a court has subject matter jurisdiction over federal securities fraud claims involving non-U.S. actors or actions – the "effects test" and the "conduct test."  See Tri-Star Farms, 225 F. Supp. 2d at 573 (citation omitted).  "The 'effects test' considers whether conduct outside the United States has had a substantial adverse effect on United States investors or United States securities markets."  Id.  "The 'conduct test' looks at whether conduct within the United States is alleged to have played some part in the perpetration of a securities fraud on investors outside of this country."  Id.  The Foreign Investors satisfy neither the "effects" nor "conduct" test.

### 1.  The Foreign Investors Do Not Satisfy the Effects Test.

Because "[t]he 'effects test' considers whether conduct outside the United States has had a substantial adverse effect on United States investors or United States securities markets," it is inapplicable where, as here, the putative class consists solely of

13

foreign plaintiffs. Id. ("Jurisdiction over . . . non-resident foreign purchasers of . . . shares cannot be premised on domestic 'effects' of foreign conduct."); see also In re Baan Co. Sec. Litig., 103 F. Supp. 2d 1, 11 (D.D.C. 2000) ("The effects test only extends jurisdiction as to those American plaintiffs who are affected."); McNamara v. Bre-X Minerals Ltd., 32 F. Supp. 2d 920, 923-24 (E.D. Tex. 1999) (Canadian plaintiffs could not rely on effects test); Koal Industries Corp. v. Asland, S.A., 808 F. Supp. 1143, 1155 (S.D.N.Y. 1992) (only American investors have standing to seek the extraterritorial protection of the federal securities laws through the effects test).

## 2.    The Foreign Investors Do Not Satisfy the Conduct Test.

Under the "conduct test," a federal court has subject matter jurisdiction if the defendants' conduct in the United States was "significant and material" to the alleged fraud. Tri-Star Farms, 225 F. Supp. 2d at 576 (citing SEC v. Kasser, 548 F.2d 109, 115 n.25, 116 (3d Cir. 1977)). "'Merely preparatory' or insubstantial conduct is not enough." Tri-Star Farms, 225 F. Supp. 2d at 576 (quoting Kasser, 548 F.2d at 115). Indeed, several courts have held that the alleged domestic conduct must directly cause the losses complained of in the complaint. See Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 993 (2d Cir. 1975);[9] In re Baan Co. Sec. Litig., 103 F. Supp. 2d at 9; McNamara 32 F. Supp. 2d at

---

[9]    The Second Circuit in Bersch held that, in order to satisfy the "conduct test," the alleged domestic conduct must have "directly caused" the alleged losses. 519 F.2d at 993. Although the Third Circuit has never directly addressed whether direct causation is a necessary element of the "conduct test," there is support for the proposition that the standards espoused by the Second Circuit are applicable to cases brought within the Third Circuit. In Kasser – the last Third Circuit opinion to discuss in depth the extraterritorial reach of the anti-fraud provisions of the federal securities laws – the court cited Bersch in support of its analysis and expressly recognized the Second Circuit as having a particular expertise in the

(continued...)

923; Interbrew S.A. v. EdperBrascan Corp., 23 F. Supp. 2d 425, 429 (S.D.N.Y. 1998);

cf. Zoelsch v. Arthur Andersen & Co., 824 F.2d 27, 32 (D.C. Cir. 1987) (expressing

doubt as to whether "an American court should ever assert jurisdiction over domestic

conduct that causes loss to foreign investors").

     In Tri-Star Farms, the most recent case within this Circuit to discuss the

extraterritorial application of United States securities laws, the district court was pre-

sented with facts similar to those in the present matter.  As here, the putative class in Tri-

Star Farms consisted of foreign investors who purchased securities on a foreign exchange.

See 225 F. Supp. 2d at 569-70.  The putative class alleged violations of the Exchange Act

as a result of allegedly fraudulent misrepresentations made by foreign defendants

primarily in the United Kingdom.  Id. at 577.

     The Tri-Star Farms court found no subject matter jurisdiction existed

because "[t]he only fraudulent conduct alleged to have taken place in the United States

[was] the inclusion of some of the purported fraudulent misrepresentations and omissions

in forms [defendant] filed with the SEC and the dissemination of [] statements published

in the British press in the United States."  Id.  Moreover, the court held subject matter

jurisdiction did not exist even though the alleged misrepresentations dealt with the

defendants' United States operations, reasoning:

> [The] United States business operations were not themselves fraudulent.
> Rather, the fraud arises from representations defendants did or did not

---

[9]    (...continued)
area of securities laws.  Kasser, 548 F.2d at 115.  However, the facts of Kasser –
which was decided almost thirty years ago – "did not require the [Third Circuit] to
decide the issue of whether direct causation is a necessary element of the 'conduct
test.'"  Tri-Star Farms, 225 F. Supp. 2d at 576.

> make <u>about</u> those operations.  Simply making fraudulent statements about what is happening in the United States does not make those statements 'United States conduct' for purposes of the conduct test.  Nor does it make the underlying activity itself fraudulent.

<u>Id.</u> at 578 (emphasis in original).

Here, as in <u>Tri-Star Farms</u>, the putative class consists of foreign investors who acquired their shares of DaimlerChrysler through foreign exchanges.  (Compl. ¶ 1)  The purported fraud on the class occurred through allegedly false public statements.  (<u>See</u> <u>id.</u> ¶¶ 1-10)  Because the Foreign Investors were not party to any merger negotiations, they could not have been defrauded by any alleged statements made during the course of negotiations.  Thus, any domestic conduct they cite – such as Schrempp's proposal of a merger to Eaton during an initial meeting in Michigan (<u>id.</u> ¶ 52) and subsequent negotiations in New York (<u>id.</u> ¶ 53) – was merely "preparatory" to the alleged fraud and cannot serve to satisfy the conduct test.[10]  This preparatory domestic conduct that never reached the Foreign Investors, moreover, did not "directly cause" the alleged harm.  <u>See</u> <u>Bersch</u>, 519 F.2d at 993 ("[T]he anti-fraud provisions of the federal securities laws . . . [d]o not apply to losses from sales of securities to foreigners outside the United States unless acts (or culpable failures to act) within the United <u>directly caused</u> such losses.") (emphasis added).

---

[10]    Even then, the majority of preparatory acts are alleged to have occurred outside of the United States.  As alleged in the Complaint, the "fraud" was purportedly planned outside of the United States (Compl. ¶ 49); most of the high-level merger negotiations took place in Europe (<u>id.</u> ¶ 54); the BCA was executed in London; the press conference announcing the "merger of equals" took place in London (<u>id.</u> ¶ 60); and "the joint Registration Statement/Proxy-Prospectus [was] prepared by Daimler-Benz in Germany" (<u>id.</u> ¶ 63).

16

In addition, the purportedly false statements about the intended nature of the Merger (see Compl. ¶¶ 4, 6, 52) can – at most – be characterized as allegations of false public statements made outside the United States about events transpiring in the United States, as was the case in Tri-Star Farms. See Tri-Star Farms, 225 F. Supp. 2d at 578. But "[s]imply making [allegedly] fraudulent misrepresentations about what is happening in the United States does not make those statements 'United States conduct' for purposes of the conduct test." Id.

Indeed, most, if not all, of the press releases cited in the complaint originated from Germany, and the purported "admission" of the fraud, i.e., the October 2000 article published in the Financial Times, is based on an interview by the British publication that took place in Germany.  And significantly, DaimlerChrysler filed a separate German offering prospectus distinct from the registration statement it filed in the United States with the German exchanges where the Lead Plaintiffs obtained their shares. See Exh. A.[11]  Accordingly, the Complaint fails to satisfy the conduct test.

_____

[11]     In any case, as a matter of law, defendants' act of merely filing a registration statement in the United States is not in and of itself sufficient to confer subject matter jurisdiction with respect to foreign investors who obtained their shares on foreign exchanges. See Tri-Star Farms Ltd. v. Marconi, PLC, 225 F. Supp. 2d 567, 577 (W.D. Pa. 2002). See also Froese v. Staff, No. 02 CV 5744, 2003 WL 21523979, at *2 (S.D.N.Y. July 7, 2003) (in class action by foreign investors who purchased shares in German company on German exchanges, no subject matter jurisdiction where "the fraud itself occurred, if at all, when the allegedly fraudulent statements were conceived, engineered, and published in Germany"; it was "these misstatements and not any activity which led to the alleged misrepresentations which 'directly caused' the financial losses"); Kaufman v. Campeau Corp., 744 F. Supp. 808, 810 (S.D. Ohio 1990) ("[T]he Court fails to discern how inclusion of alleged misrepresentations and omissions in materials filed or circulated in the United States could have played a significant role in any losses sustained by the Canadian investors.").

17

\*     \*     \*

The Court is presented with "a case in which the alleged fraud was committed by foreign defendants on foreign individuals in a foreign country – a situation the federal securities laws were not intended to remedy." Tri-Star Farms, 225 F. Supp. 2d at 578 (citing Butte Min. PLC v. Smith, 76 F.3d 287, 291 (9th Cir. 1996)). Here, all United States interests were redressed in the Settlement with the Original Class (which included United States investors, regardless of where they purchased shares, and all purchasers on United States exchanges, regardless of their nationality), and the Court should find that subject matter jurisdiction is therefore lacking as to the present claims of the Foreign Investors. See Nathan Gordon Trust v. Northgate Exploration, Ltd., 148 F.R.D. 105, 107-08 (S.D.N.Y. 1993) (finding subject matter jurisdiction over purchasers on New York Stock Exchange but not foreign exchanges); Tri-Star Farms, 225 F. Supp. 2d at 571 n.6 (court had jurisdiction over all purchasers on the NASDAQ market, regardless of whether they were foreign or American, but not over claims of purchasers of securities of foreign company on a foreign exchange); Kaufman v. Campeau Corp., 744 F. Supp. 808, 810 (S.D. Ohio 1990) (certifying class as to domestic investors but not foreign investors due to a lack of jurisdiction over their claims); see also McNamara, 32 F. Supp. 2d at 923 (finding lack of jurisdiction as to Canadian plaintiffs who bought on Canadian exchanges and holding "Canadian Plaintiffs cannot justify jurisdiction by bootstrapping on independent American losses").

18

II.    **THE COURT SHOULD DECLINE JURISDICTION ON GROUNDS OF INTERNATIONAL COMITY AND FOREIGN POLICY.**

Even if the Court were to find that subject matter jurisdiction exists, it should decline to exercise it based on the grounds of international comity and foreign policy. As the Third Circuit has directed, "[w]hen foreign nations are involved . . . foreign policy, reciprocity, comity, and limitations of judicial power are considerations that should have a bearing on the decision to exercise or decline jurisdiction." Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1296 (3d Cir. 1979). Here, these considerations mandate that the exercise of jurisdiction be declined.

International comity is "'the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under protection of its laws.'" In re Nazi Era Cases Against German Defendants Litig., 129 F. Supp. 2d. 370, 386 (D.N.J. 2001) (quoting Hilton v. Guyot, 159 U.S. 113, 143 (1895)). Pursuant to the principle of international comity, a court "should decline to exercise jurisdiction under certain circumstances in deference to the laws and interests of another foreign country." Paraschos v. YBM Magnex Int'l, Inc., 130 F. Supp. 2d 642, 645 (E.D. Pa. 2000) (citing Basic v. Fitzroy Eng'g, Ltd., No. 97-1052, 1997 WL 753336, at *8 (7th Cir. Dec. 4, 1997)). International comity "is of increasing importance in today's world of global transactions and multi-national corporations." In re Nazi Era Cases, 129 F. Supp. 2d at 387.

Comity is reflected in the principle of United States law that extraterritorial application of a United States law is permissible only to the extent it would not be

19

"unreasonable."  See Restatement (Third) of Foreign Relations Law of the United States:

Limitations on Jurisdiction to Prescribe § 403(1) (1987) ("Restatement"); see also F.

Hoffman-La Roche, 124 S. Ct. at 2367.  Indeed, the principle that "an exercise of

jurisdiction . . . is nonetheless unlawful if it is unreasonable, is established in United

States law, and has emerged as a principle of international law as well."  Restatement §

403 cmt. a.[12]

Whether the exercise of jurisdiction is reasonable may turn on a number of

factors, including:

> (a) the link of the activity to the territory of the regulating state, i.e., the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory;
>
> (b) the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity to be regulated, or between that state and those whom the regulation is designed to protect;
>
> (c) the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted;

---

[12]    Principles of international comity are typically invoked in two separate instances: (i) where there are competing proceedings in the United States and another country or (ii) where a United States court has some basis for jurisdiction with respect to a person or activity having connections to another country but must determine whether, in light of the legitimate sovereign interests of other nations, it would be reasonable to exercise jurisdiction.  See, e.g., Torres v. S. Peru Copper Corp., 965 F. Supp. 899, 908-09 (S.D. Tex. 1996) (despite lack of competing proceedings in foreign country, court dismissed environmental tort action filed against Peruvian company by Peruvian plaintiffs on ground of international comity).  The latter type of comity is often referred to as "prescriptive comity." See F. Hoffman-La Roche Ltd. v. Empagran S.A., 124 S. Ct. 2359, 2366-67 (2004).

20

(d) the existence of justified expectations that might be protected or hurt by the regulation;

(e) the importance of the regulation to the international political, legal, or economic system;

(f) the extent to which the regulation is consistent with the traditions of the international system;

(g) the extent to which another state may have an interest in regulating the activity; and

(h) the likelihood of conflict with regulation by another state.

Id. at § 403(2); see also Torres v. S. Peru Copper Corp., 965 F. Supp. 899, 908 (S.D. Tex. 1996).

The Supreme Court recently addressed the issue of prescriptive comity in F. Hoffman-La Roche. In that case, the Supreme Court looked at the reasonableness of applying United States antitrust laws to foreign conduct. It explained that "America's antitrust laws, when applied to foreign conduct, can interfere with a foreign nation's ability independently to regulate its own commercial affairs." F. Hoffman-La Roche, 124 S. Ct. at 2366. It further explained that the price-fixing conduct at issue in that case significantly and adversely affected customers both outside and within the United States, but the adverse foreign effect was "independent" of any adverse domestic effect. Id. The Supreme Court therefore held it is not reasonable to apply United States laws to foreign conduct insofar as the conduct causes "independent foreign harm and that foreign harm alone gives rise to the plaintiff's claim." Id. at 2367. To do so, the Court held, would offend principles of international comity. Id. at 2366-67, 2369.

21

The rationale underlying the Supreme Court's holding in F. Hoffman-La Roche applies with equal force here. In the same way application of United States antitrust laws to foreign conduct "creates a serious risk of interference with a foreign nation's ability independently to regulate its own commercial affairs," id. at 2367, the exercise of jurisdiction here over foreign purchasers on foreign exchanges would interfere with the prerogative of other nations to regulate their own securities markets and protect their own investors.

Likewise, a weighing of the Restatement factors strongly militates against the exercise of jurisdiction. The Foreign Investors acquired their securities on or through exchanges located outside the territory of the United States, any alleged domestic conduct was minor in comparison to the alleged conduct that occurred abroad, and the Foreign Investors do not complain of any domestic effects injurious to them (see Restatement § 403(2)(a)); the putative class consists entirely of foreign plaintiffs and their alleged injuries occurred entirely outside of the United States (see id. § 403(2)(b)); the countries that have an interest in the claims of Foreign Investors have their own securities regulatory schemes containing anti-fraud protections (see id. § 403(2)(c)); other countries – most significantly Germany – have a strong interest in regulating the type of activity upon which the claims of the Foreign Investors are based[13] (see id. § 403(2)(g)); and there is a

---

[13]    Certainly Germany would have an interest in an alleged fraudulent scheme purportedly planned and carried out by its citizens against a class of plaintiffs that is predominately German and in connection with securities traded on its own exchanges.

22

risk of conflict between the laws of the United States and the laws of other interested countries[14] (see id. § 403(2)(h)).

Based on these factors, the Court should decline to exercise jurisdiction in this matter.  See F. Hoffman-La Roche, 124 S. Ct. at 2367-69 (relying, in part, on Section 403 in determining it would be unreasonable for a United States court to exercise jurisdiction over foreign plaintiffs' Sherman Act claims where the complained of conduct had an independent foreign effect); see also Torres, 965 F. Supp. at 909 (dismissing case on ground of international comity where "[t]he challenged activity and alleged harm occurred entirely in Peru; Plaintiffs [were] all residents of Peru; enforcement in Peru of any judgment rendered by [the District Court] [was] questionable; the challenged conduct [was] regulated by the Republic of Peru and exercise of jurisdiction by [the] Court would interfere with Peru's sovereign right to control its own environment and resources; and the Republic of Peru ha[d] expressed strenuous objection to the exercise of jurisdiction by [the District Court]").  In the final analysis, this case is dominated by foreign, as opposed to United States, interests.  See supra pp. 16-17.

Where, as here, the putative class consists entirely of foreign investors who purchased stock on foreign exchanges and defendants are all German citizens, dismissal on the basis of international comity would not be contrary to the interests of the United States.  See Paraschos, 130 F. Supp. 2d at 647 (dismissal of securities fraud action

---

[14]    See Brief of the Federal Republic of Germany as Amicus Curiae in Support of Petition for Writ of Certiorari, F. Hoffman-La Roche Ltd. v. Empagran, S.A., 124 S. Ct. 2359 (No. 03-724) (2004), available at 2003 WL 22896686, at *8 (setting forth some of the "controversial features" of the U.S. legal system not present in Germany, including "extensive discovery, jury trials, class actions, contingent fees, and punitive damages").

23

on basis of comity was not contrary to the interests of the United States where claims were brought by class of investors who were predominantly Canadian against a Canadian corporation for violations of the Exchange Act – "the United States does not have an insurmountable interest in regulating Canadian corporations and investors who choose to purchase securities that are clearly regulated by Canadian law or in applying U.S. law when its application was not contemplated").[15]  Because this action is "so overwhelmingly dominated by [foreign] interests" and dismissal "would not be contrary or prejudicial to the interest of the United States," the Court should decline to exercise jurisdiction on the basis of international comity.  Id.

## III.    THE FOREIGN INVESTORS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

### A.    The Applicable Limitations Periods

Prior to the passage of the Sarbanes-Oxley Act, the applicable statute of limitations for both Exchange Act and Securities Act of 1933 (the "Securities Act") claims was one year after the discovery of the alleged fraud or three years after the alleged securities law violation.  See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991); 15 U.S.C. § 77M.  Section 804 of the Sarbanes-Oxley Act extended the statute of limitations applicable to claims under the Exchange Act to two years after discovery of the alleged fraud or five years after the alleged securities law violation, whichever is shorter.  Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 804(a)(2), 116 Stat. 745, 801 (codified at 28 U.S.C. § 1658(b)).  This limitations period

---

[15]    As discussed above, any and all United States interests have already been fully redressed by the Settlement with the Original Class.

24

applies "to all proceedings . . . commenced on or after the date of enactment of the [Sarbanes-Oxley] Act" on July 30, 2002. Id. at § 804(b), 116 Stat. at 801.

The extended statute of limitations does not apply to the claims asserted here for two reasons. First, the Sarbanes-Oxley Act does not revive claims, such as those here, that were time-barred when the Act took effect on July 30, 2002. See Foss v. Bear, Stearns & Co., Inc., 394 F.3d 540, 541-42 (7th Cir. 2005); In re Enterprise Mortgage Acceptance Co. Sec. Litig., 391 F.3d 401, 410-11 (2d Cir. 2004); Lieberman v. Cambridge Partners, L.L.C., No. Civ. A. 03-2317, 2004 WL 1396750, at *3 (E.D. Pa. June 21, 2004); Glaser v. Enzo Biochem, Inc., 303 F. Supp. 2d 724, 732-34 (E.D. Va. 2003). Here, as set forth below, all of the Foreign Investors' claims already were time-barred at the time the Sarbanes-Oxley Act was passed.

Second, the Sarbanes-Oxley Act's extended limitations periods do not apply to plaintiffs' Securities Act claims. Section 13 of the Securities Act provides that any claim under Section 11 or Section 12(a)(2) must be brought "within one year after the discovery of the untrue statement" and "[i]n no event shall any such action be brought to enforce a liability created under [Section 11 or Section 12(a)(2)] of this title more than three years after the security was bona fide offered to the public, or under [Section 12(a)(2)] of this title more than three years after the sale." 15 U.S.C. § 77M. This section was not repealed by the Sarbanes-Oxley Act and thus remains in effect. See Lieberman, 2004 WL 1396750, at *3 ("[T]he [Sarbanes-Oxley Act's] longer statute of limitations and repose periods do not apply to section 12(a)(2) claims.").

This conclusion is compelled by the plain text of Section 804(a)(2), which extends the limitations period for claims of "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws." 28 U.S.C. § 1658. Because Section 804 applies only to claims involving "fraud, deceit, manipulation or contrivance," and claims under Sections 11 and 12(a)(2) of the Securities Act "do not require a showing of fraudulent intent, but are based on negligence or strict liability, section 804's enlarged statute of limitations does not apply, but section 13 governs." See In re Enron Corp. Sec., Derivative & ERISA Litig., No. MDL-1446, Civ. A. H-01-3624, 2004 WL 405886, at *12 (S.D. Tex. Feb. 25, 2004) (emphasis added).

Here, the Foreign Investors' explicitly assert their Securities Act claims do not sound in fraud. Indeed, the Complaint abjures any claim of fraud, specifically stating that plaintiffs' Securities Act claims are "predicated upon Defendants' strict liability" and "do not allege fraud, scienter or the intent of the Defendants to defraud Plaintiff or members of the Class." (Compl. ¶¶ 125, 130, 138) Because plaintiffs' Securities Act claims are admittedly based on a theory of "strict liability" (id.), the one-year/three-year limitations period is applicable to such claims. See Lieberman, 2004 WL 1396750, at *3.

## B.    The Limitations Period Expired Prior to Commencement Of this Action.

On the face of their Complaint, the Foreign Investors plead the alleged fraud was revealed to the public for the first time when the Financial Times article was published on October 30, 2000 (see Compl. ¶ 88) – three and a half years before they filed their Complaint. (See id.) Thus, their claims are untimely under any measure and should be dismissed.

C.     **The Foreign Investors' Claims Have Not Been Tolled.**

Although the Foreign Investors were initially part of the putative class alleged in the Original Class Complaint, the filing of the original class action complaints in November and December 2000 did not toll their claims. In American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), the Supreme Court held that when a putative class action is filed, the statute of limitations is tolled for the putative members of the class pending a decision on class certification. Id. at 553-54. If class certification is subsequently denied, the statute of limitations begins to run again and any persons who would have been part of the class may subsequently intervene in the pending case or they may file individual suits. See id. at 553; Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 351-52 (1983). The American Pipe tolling doctrine, however, is inapplicable here.

As the Third Circuit recently held, while "American Pipe tolling applies to the filing of a new class action where certification was denied in the prior suit based on lead plaintiffs' deficiencies as class representative, . . . American Pipe tolling does not apply where certification was denied based on deficiencies in the purported class itself." Yang v. Odom, 392 F.3d 97, 99 (3d Cir. 2004) (emphasis added). Here, the Court excluded the Foreign Investors from the Original Class based on "deficiencies in the purported class itself," not deficiencies of the class representatives. See In re DaimlerChrysler Sec. Litig., 216 F.R.D. at 301 (excluding foreign investors from the class due to the "the practical difficulties involved in maintaining a class comprising foreign investors"). Thus, the Foreign Investors may not take advantage of the American Pipe tolling doctrine.

27

IV.   **PLAINTIFFS DO NOT AND CANNOT STATE A CLAIM UNDER THE EXCHANGE ACT.**

    A.   **As this Court Previously Ruled, the Foreign Investors' Channel Stuffing Allegations Fail to State a Claim.**

        1.   **The Foreign Investors' Channel Stuffing Allegations Fail To Identify Any Actionable Misstatements or Omissions.**

The Foreign Investors' allegations of channel stuffing are almost identical to those made by the Original Class, which were dismissed by this Court for failure to state a claim. See Tracinda Corp. v. DaimlerChrysler AG, 197 F. Supp. 2d 42, 86 (D. Del. 2002). For the same reasons previously articulated by this Court, see id. at 77-86, the Foreign Investors have likewise failed to state a claim for channel stuffing.

The Foreign Investors' channel stuffing theory is premised on the allegation that defendants artificially inflated revenues and earnings by prematurely recognizing income from the sale of automobiles DaimlerChrysler "pushed out to its dealers" and "far exceeded demand." (Compl. ¶ 93) What the Foreign Investors do not -- and cannot -- allege is that the sales figures reported by DaimlerChrysler in 2000 were inaccurate, and this is fatal to their claim. Indeed, the best the Foreign Investors can allege is that DaimlerChrysler convinced its dealers to purchase cars in the first half of 2000 that they were then unable to sell because DaimlerChrysler offered inadequate incentives. (See Compl. ¶ 97) This is not a claim for fraud, but rather a criticism of the manner in which DaimlerChrysler managed its business. As the Court previously recognized, this type of alleged corporate mismanagement is not actionable under the federal securities laws. See Tracinda, 197 F. Supp. 2d at 82 ("To the extent that Class Plaintiffs claim that Defendants convinced dealers to purchase cars and then offered inadequate incentives

28

causing sales to decline and inventory to remain stagnant, Plaintiffs have failed to state an actionable securities claim.").

Moreover, even if the Foreign Investors' channel stuffing claim could be construed as alleging something other than mismanagement, which it cannot, it must nevertheless fail because it is impermissibly based on "conclusory and non-specific allegations." Id. As was the case with regard to the channel stuffing claim asserted by the Original Class, the Foreign Investors "offer insufficient factual allegations to support their conclusion that the incentive program was a sham, and virtually no factual allegations to support their conclusion that the lack of an incentive program or the alleged channel stuffing were linked to Defendants' alleged takeover of Chrysler." Id. Thus, for the identical reasons articulated by the Court with regard to the channel stuffing claim of the Original Class, the Foreign Investors here have failed to state a claim for channel stuffing. See id. at 81-82.

## 2.     The Complaint Alleges No Facts Giving Rise to a Strong Inference of Scienter.

Even if the Foreign Investors had alleged an actionable misstatement or omission with regard to their channel stuffing claim – and they have not – they have failed to satisfy the Exchange Act's requirement that they plead specific facts giving rise to a strong inference of scienter. See 15 U.S.C. § 78u-4(b)(2); see also In re Alpharma Inc., Sec. Litig., 372 F.3d 137, 153 (3d Cir. 2004) (affirming dismissal of complaint because, inter alia, plaintiffs "failed to allege facts giving rise to a strong inference of scienter"); GSC Partners CDO Fund v. Washington, 368 F.3d 228, 245 (3d Cir. 2004) (same). Indeed, the Complaint lacks any particularized allegations to support an infer-

29

ence that DaimlerChrysler actually knew in 1999 or early 2000 sales would decline in the latter half of 2000.

As this Court previously recognized, "allegations of channel stuffing alone are insufficient to support a strong inference of scienter." Tracinda, 197 F. Supp. 2d at 84 (citing Greebel, 194 F.3d at 202). Moreover, to the extent the Foreign Investors attempt to allege scienter by suggesting defendants' motive to stuff the channel was to "conceal the true financial and operational condition of the Company, in order to further conceal the fact that they had not acquired Chrysler in a merger of equals, but rather in a takeover transaction" (Compl. ¶ 94), this allegation "is conclusory and unsupported by sufficient factual allegations." Tracinda, 197 F. Supp. 2d at 84. "Indeed, even the Forbes article, upon which [] Plaintiffs' primarily rely for their channel stuffing allegations, does not support [] Plaintiffs' allegation that the alleged channel stuffing was part and parcel of Defendants' alleged scheme to take control of Chrysler." Id. Finally, as this Court noted, this alleged "motive" is "tenuous and somewhat illogical." Id. ("Assuming that Defendants' motive for using channel stuffing to hide the Company's true financial condition was to facilitate the completion of its take-over of Chrysler, it seems to the Court that the Company's allegedly deteriorating financial condition would have made the job easier by justifying the subsequent management changes.") (citation omitted).

### 3. The Foreign Investors' Channel Stuffing Claim Is Time-Barred.

The Foreign Investors' channel stuffing claim is also untimely. The channel stuffing claim of the Original Class was dismissed on March 22, 2002, more than two years prior to the time the Foreign Investors filed the Complaint. Thus, regardless of

whether the one-year or two-year limitations period applies, the channel stuffing claim is time-barred.

**B.     Plaintiffs Have Not and Cannot State a**
        **Section 14(a) Claim as a Matter of Law.**

The Foreign Investors also assert a claim under Section 14(a) of the Exchange Act which provides for liability for those who solicit proxies by way of a false and misleading proxy statement. Here, however, no defendant issued any proxy statement soliciting proxies from any of the Foreign Investors.[16] The proxy statement on which the Foreign Investors seek to base their Section 14(a) claim was issued by Chrysler, not Daimler-Benz or DaimlerChrysler. Indeed, Daimler-Benz and DaimlerChrysler – two corporations organized under the laws of Germany (Exh. D at 7) – are "foreign private issuers"[17] exempt from the rules under the Exchange Act concerning the furnish-

---

[16]     See, e.g., Robbins v. Banner Indus., Inc., 285 F. Supp. 758, 761-62 (S.D.N.Y. 1966) (dismissing Section 14(a) claim because, inter alia, plaintiff failed to show defendant was author of proxy statement); In re Vivendi Universal, S.A. Sec. Litig., No. 02 Civ. 5571, 2003 WL 22489764, at *7 (S.D.N.Y. Nov. 3, 2003) (dismissing Section 14(a) claim because plaintiffs "fail[ed] to present any authority to support its position that liability may be imputed to Vivendi for Seagram's alleged misstatements in Seagram's proxy statements").

[17]     The term "foreign private issuer" means any foreign issuer other than a foreign government except an issuer meeting the following conditions: "(1) More than 50 percent of the issuer's outstanding voting securities of such issuer are directly or indirectly held of record by residents of the United States; and (2) Any of the following: (i) The majority of the executive officers or directors are United States citizens or residents; (ii) More than 50% of the assets of the issuer are located in the United States; or (iii) The business of the issuer is administered principally in the United States." 17 C.F.R. § 240.3b-4(c) (2004). DaimlerChrysler plainly is a "foreign private issuer."

31

ing and content of proxy statements.[18] As such, they are likewise exempt <u>as a matter of law</u> from liability under Section 14(a). <u>See</u> <u>Batchelder v. Kawamoto</u>, 147 F.3d 915, 922-23 (9th Cir. 1998); <u>In re Vivendi</u>, 2003 WL 22489764, at *7.

### C.    The "Merger of Equals" Allegations Fail to State a Claim.

The Foreign Investors' allegations of fraud in connection with the characterization of the Merger as a "merger of equals" (<u>see, e.g.</u>, Compl. ¶¶ 63-65) are substantively identical to the allegations contained in the Tracinda, Glickenhaus and Original Class complaints. As defendants have previously asserted, those allegations fail to state a claim as a matter of law because the terms of the Merger were fully disclosed in the Proxy Statement/Prospectus, which explained precisely what was meant by the term "merger-of-equals" and exactly how the "merger-of-equals" would be realized through the BCA's corporate governance provisions. DaimlerChrysler explicitly preserves those arguments here.

Moreover, the Acquirors' claims here fail as a matter of law because they have not pleaded – and cannot plead – loss causation. The Foreign Investors allege that on October 30, 2000, the <u>Financial Times</u> published an article that "reported, for the first time, quoting Defendant Schrempp as stating that the Merger of Daimler-Benz and Chrysler was never intended to be a merger-of-equals, and that Defendants had lied to get

---

[18]    "Daimler-Benz, as a foreign private issuer, is exempt from the rules under the Exchange Act prescribing the furnishing and content of proxy statements." Exh. D at 3. DaimlerChrysler also qualified as a foreign private issuer when the Proxy/Prospectus was distributed because at that time: DaimlerChrysler was 100% owned by a German entity; the majority of the executive officers or directors were not United States citizens or residents; it had no assets located in the United States; and it did no business in the United States. <u>Id.</u> at 5, 7.

the deal approved by Chrysler shareholders." (Compl. ¶ 88) This alleged admission is fatal to their ability to show "loss causation" because it cannot be disputed that in the days immediately following the publication of this alleged disclosure, the market price of DaimlerChrysler stock actually rose. See, e.g., Exh. E (closing prices of DaimlerChrysler AG stock traded on the Frankfurt Stock Exchange, October 30, 2000 through November 2, 2000).[19] Because the price of the stock did not decline (and actually increased) in the wake of this disclosure, the Foreign Investors cannot prove their "losses," if any, were attributable to the alleged fraud. See In re Cybershop.com Sec. Litig., 189 F. Supp. 2d 214, 233 (D.N.J. 2002) (dismissing 10(b) claims where stock price increased after company filed amended 10-Q) (citing Semerenko v. Cendant Corp., 223 F.3d 165, 185 (3d Cir. 2000)); see also In re Ikon Office Solutions, Inc. Sec. Litig., 131 F. Supp. 2d 680, 687 (E.D. Pa. 2001) (dismissing 10(b) claims where stock price did not decline upon disclosure of alleged misrepresentations), aff'd, 277 F.3d 658 (3d Cir. 2002).

Finally, the Exchangers' claims are also barred for failure to plead loss causation in accordance with Tse v. Ventana Medical Systems, Inc., 297 F.3d 210 (3d Cir. 2002).

---

[19]     The Court can take judicial notice of DaimlerChrysler's stock price. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002).

## CONCLUSION

For the foregoing reasons, DaimlerChrysler and Daimler-Benz respectfully request that the Court grant their motion and dismiss the Complaint in its entirety and with prejudice.

Dated: March 1, 2005

By: _____
Thomas J. Allingham II (#0476)
Robert S. Saunders (#3027)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

OF COUNSEL:
Jonathan J. Lerner
Lea Haber Kuck
Joseph N. Sacca
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants DaimlerChrysler
AG and Daimler-Benz AG

34