# TAB K

LEXSEE 2004 US DIST LEXIS 21230

IN RE VIVENDI UNIVERSAL, S.A. SECURITIES LITIGATION

02 Civ. 5571 (RJH)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2004 U.S. Dist. LEXIS 21230*

**October 19, 2004, Decided**
**October 22, 2004, Filed**

**SUBSEQUENT HISTORY:** Motion denied by *In re Vivendi Universal, S.A., Secs. Litig., 2004 U.S. Dist. LEXIS 26077 (S.D.N.Y., Dec. 29, 2004)*

**PRIOR HISTORY:** *In re Vivendi Universal, S.A. Sec. Litig., 2003 U.S. Dist. LEXIS 19431 (S.D.N.Y., Nov. 3, 2003)*

**DISPOSITION:** [*1] All motions for reconsideration denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Rosenbaum Partners, L.P., on behalf of themselves and all others similarly situated, Plaintiff: Brian C. Kerr, Milberg Weiss Bershad & Schulman LLP (NYC), New York, NY; Corey D. Holzer, Holzer Holzer & Cannon LLC, Atlanta, GA; Gregory Mark Nespole, Freeman & Herz, L.L.P., New York, NY; James Stuart Notis, Richard Barry Margolies, Arthur N. Abbey, Abbey Gardy LLP, New York, NY; Patrick J. Coughlin, Milberg, Weiss Bershad Hynes & Lerach, LLP, New York, NY; Randi D. Bandman, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY; Sol Schreiber, William C. Fredericks, Milberg, Weiss, Bershad & Schulman, LLP, New York, NY; Sylvia Wahba, Milberg Weiss Bershad Hynes & Lerach, LLP, New York, NY.

For Miami Group, consisting of the Retirement System for General Employees of the City of Miami Beach, Oliver M. Gerard, Francois R. Gerard, Prigest S.A. and Tocqueville Finance S.A., Pearson-Doniger Family, consisting of two sister and their respective family members - Beatrice Doniger, Bruce Doniger, Grandchildren's Trust by Bruce Doniger Trustee, Alison Doniger, Michael Doniger, Edward B. Brunswick and Ruth Pearson Trust Pearson Trustee, Plaintiffs: [*2] Milberg Weiss Bershad Hynes & Lerach, Sol Schreiber, William C. Fredericks, Milberg, Weiss, Bershad & Schulman, LLP, New York, NY; Brian C. Kerr, Milberg Weiss Bershad & Schulman LLP (NYC), New York, NY; Corey D. Holzer, Holzer Holzer & Cannon LLC, Atlanta, GA; James Stuart Notis, Richard Barry Margolies, Arthur N. Abbey, Abbey Gardy LLP, New York, NY.

For William individually and on behalf of all others similarly situated, Olivier Chastan, Reed S. Clark, Daha Davis, Collen Dodi, Ruth Pearson Trust Pearson Trustee, Edward B Brunswick, Michael Doniger, Alison Doniger, Grandchildren's Trust by Bruce Doniger Trustee, Bruce Doniger, Beatrice Doniger, Jeffrey Kurtz, Hal Price, W. Scott Polland, Jr., Nicholas A. Radosevich, Pearson-Doniger Family, Miami Group, Rosenbaum Partners, L.P., Marc Rovner, Sheldon Seid, Leslie Turbowitz, Yong Man Kim, Consol Plaintiffs: Corey D. Holzer, Holzer Holzer & Cannon LLC, Atlanta, GA.

For Vivendi Universal, Defendant: Luke O. Brooks, Daniel Slifkin, Cravath, Swaine & Moore LLP, New York, NY; Paul C. Saunders, Cravath, Swaine & Moore, L.L.P., New York, NY.

For Jean-Marie Messier, Defendant: Jennifer L. Hurley, King & Spalding LLP, New York, [*3] NY; Michael J. Malone, King & Spalding, New York, NY.

For Vivendi Universal, S.A., Consol Defendant: Luke O. Brooks, Daniel Slifkin, Cravath, Swaine & Moore LLP,

Case 1:04-cv-00331-JJF    Document 57-8    Filed 05/02/2005    Page 3 of 13

2004 U.S. Dist. LEXIS 21230, *                                                    Page 2

New York, NY; Paul C. Saunders, Cravath, Swaine & Moore, L.L.P., New York, NY.

For Guillaume Hannezo, Consol Defendant: Martin L. Perschetz, Michael Everett Swartz, Schulte Roth & Zabel LLP, New York, NY.

For Universal Studios, Inc., Consol Defendant: Daniel Slifkin, Cravath, Swaine & Moore LLP, New York, NY; Paul C. Saunders, Cravath, Swaine & Moore, L.L.P., New York, NY.

For Barry Family, LP, Individually and on behalf of all other similarly situated., Consol Plaintiff: Lionel Z. Glancy, Michael M. Goldberg, Glancy & Binkow, L.L.P., Los Angeles, CA.

For Eleanor Turberg, on behalf of herself and all others similarly situated, Consol Plaintiff: Darren J. Robbins, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., San Diego, CA; Evan Jay Kaufman, Arthur N. Abbey, Abbey Gardy LLP, New York, NY; Mark C. Gardy, Abbey Gardy, L.L.P., New York, NY; Nadeem Faruqui, Faruqui & Frauqi, New York, NY; Peter Arthur Binkow, Glancy & Binkow, Los Angeles, CA; William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, [*4] L.L.P., San Diego, CA.

**JUDGES:** Richard J. Holwell, United States District Judge.

**OPINIONBY:** Richard J. Holwell

**OPINION:**

SUPPLEMENTAL MEMORANDUM OPINION TO ORDER OF SEPTEMBER 21, 2004

I. Introduction

This case, a putative class action for alleged securities fraud, was filed against Vivendi Universal, S.A. ("Vivendi") and two of its former officers, Jean-Marie Messier and Guillaume Hannezo, on July 18, 2002. The case was originally assigned to the Honorable Harold Baer, Jr., United States District Court for the Southern District of New York. The case was reassigned to this Court on December 4, 2003.

Plaintiffs, Vivendi, Messier and Hennezo filed motions for reconsideration of an order, dated November 3, 2003, dismissing some claims in plaintiffs' complaint but declining to dismiss other claims. The Court heard oral argument on these motions on April 1, 2004. The Court issued an order, dated September 20, 2004, denying all the motions for reconsideration.

The Court writes this opinion to address separately one issue in Vivendi's motion for reconsideration, namely whether this Court has subject matter jurisdiction over foreign plaintiffs' claims pursuant to Section 10(b) of the [*5] Securities Exchange Act of 1934, *15 U.S.C. § 78j(b)*, and Rule 10b-5, *17 C.F.R. § 240.10b-5*, promulgated thereunder. The Court concludes that it does have subject matter jurisdiction and denies Vivendi's motion for reconsideration on this ground.

II. Background

The alleged facts of this case are set forth in detail in Judge Baer's November 3, 2003, opinion, *In re Vivendi Universal, S.A. Securities Litigation, 2003 U.S. Dist. LEXIS 19431, 02 Civ. 5571 (HB), 2003 WL 22489764 (S.D.N.Y. November 3, 2003)*, familiarity with which is assumed. The Court restates certain allegations here for the purpose of discussing Vivendi's motion regarding subject matter jurisdiction. n1

---

n1 Unless otherwise noted, the following factual allegations are gleaned from Judge Baer's opinion.

---

Vivendi is a French corporation comprised primarily of two major divisions: "Media and Communications" and "Environmental Services". Though it leads a global conglomerate, Vivendi is neither registered to do business in the United [*6] States nor does it make quarterly filings with the Securities and Exchange Commission ("SEC").

Beginning in June 1996, Vivendi began an acquisition program, with Messier, its Chief Executive Officer ("CEO"), and Hannezo, its Chief Financial Officer ("CFO"), at the helm. Vivendi purchased substantial equity positions in several U.S. companies, among other non-U.S. companies, by using Vivendi stock as payment or by borrowing cash against future earnings. Plaintiffs allege that these payment methods gave the defendants an incentive to inflate Vivendi's stock price and maintain favorable credit ratings, and that defendants in fact made a series of false or misleading public statements, including SEC filings, in an effort to protect the stock price and credit ratings. Some of these statements were made after September 2001, when Messier and Hannezo moved New York. On July 3, 2002, Messier resigned as CEO and Vivendi, through new management, acknowledged that it had a short-term liquidity crisis. Hannezo's term as CFO ended shortly thereafter, on July 9, 2002.

In their motion to dismiss the *Section 10(b)* and *Rule 10b-5* claims, defendants asserted that the Court lacked

Case 1:04-cv-00331-JJF   Document 57-8   Filed 05/02/2005   Page 4 of 13

Page 3
2004 U.S. Dist. LEXIS 21230, *

jurisdiction over [*7] the claims brought by foreign class members who bought Vivendi ordinary shares traded on foreign markets. In support of this assertion, Vivendi submitted two affidavits, one from an employee responsible for Senior Press Relations in the Press and Public Relations Department of Vivendi and the other from Vivendi's Vice President of Corporate, Antitrust and Music. The affidavits stated that although Messier and Hannezo resided in the United States starting in September 2001, "those individuals still spent approximately half of their time in France, and carried on many of their official functions from Vivendi's Paris office." (Decl. of Frederic Crepin, dated Feb. 21, 2003, P12.) The affidavits further stated that:

> "All Vivendi press releases drafted from October 2000 through August 2002 were done so at the request of French officers of the Company. Prior to being issued, all those press releases were reviewed by various departments of Vivendi based in Paris, France, and approved by French officers of the Company. . . . Vivendi's press releases are usually issued in Paris before being placed on the businesswire that allows for dissemination of that information into the United States. [*8] " (Decl. of Antoine Lefort des Ylouses, dated Feb. 20, 2003, PP5, 7.)

Judge Baer found that jurisdiction was satisfied under the "conduct test". The Court ruled that "given Messier's and Hannezo's decision to move to the United States, allegedly to better direct corporate operations and more effectively promote misleading perceptions on Wall Street, which harbors some of the most watched securities exchanges in the world, one can reasonably infer that the alleged fraud on the American exchange was a 'substantial' or 'significant contributing cause' of foreign investors' decisions to purchase Vivendi's stock abroad." *In re Vivendi Universal, S.A. Securities Litigation*, 2003 U.S. Dist. LEXIS 19431, 2003 WL 22489764, at *6 (internal citations and quotations omitted).

III. Discussion

A motion for reconsideration will generally be denied unless the moving party can point to decisions or data that the court overlooked. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). In practical terms, a movant needs to cite new evidence, a change of controlling law, or a clear error by the court. *See Official Comm. of Unsecured Creditors v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). [*9]

Vivendi argues that the Court committed clear error in failing to properly consider Vivendi's factual challenge to the Court's subject matter jurisdiction over claims brought by foreign purchasers of Vivendi's stock on a foreign exchange. (Mem. of Law in Supp. of Def. Vivendi's Mot. for Reconsideration at 4 (hereinafter "Br.").) This argument, in turn, consists of two subparts: (1) that the Court committed clear error in accepting as true plaintiffs' unsupported allegations for purposes of subject matter jurisdiction analysis and (2) that, in the face of an unrebutted factual challenge, the Court misapplied controlling precedent in finding jurisdiction over the claims of foreign purchasers. (Br. at 5-9.) This Court begins by discussing subject matter jurisdiction over foreign securities transactions, as a general matter, and then addresses both of Vivendi's specific arguments in order.

A. Subject Matter Jurisdiction Over Foreign Securities Transaction

"When, as here, a court is confronted with [securities] transactions that on any view are predominantly foreign, it must seek to determine whether Congress would have wished the precarious resources of the United States courts [*10] and law enforcement agencies to be devoted to them rather than leave the problem to foreign countries." *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 985 (2d Cir. 1975).

A court may exercise subject matter jurisdiction over securities claims asserted by foreigners if (a) there was conduct in the United States that directly caused the foreigners' losses and (b) such conduct was more than "merely preparatory" to a securities fraud conducted elsewhere. n2 *See Europe & Overseas Commodities Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 128-29 (2d Cir. 1998); *Itoba Ltd. v. Lep Group PLC*, 54 F.3d 118, 122 (2d Cir. 1995); *Alfadda v. Fenn*, 935 F.2d 475, 478 (2d Cir. 1991). The second prong of the conduct test is satisfied when the final step of the fraud or acts of material importance that had significantly contributed to the fraud occurred in the United States. *See Psimenos v. E.F. Hutton & Co.*, 722 F.2d 1041, 1046 (2d Cir. 1983). Inherent in these requirements "is the principle that Congress does not want the United States to be used as a base for manufacturing fraudulent security devices for export, [*11] even when these are peddled only to foreigners." *Itoba*, 54 F.3d at 122 (quotations omitted). However, a court may not exercise subject matter jurisdiction if the conduct occurring in the United States was secondary to the alleged securities fraud. *See Europe & Overseas*, 147 F.3d at 128-29.

n2 A court may also exercise subject matter jurisdiction over claims of fraudulent acts

Case 1:04-cv-00331-JJF   Document 57-8   Filed 05/02/2005   Page 5 of 13

2004 U.S. Dist. LEXIS 21230, *                                          Page 4

committed abroad if the acts "result in injury to purchasers or sellers of those securities in whom the United States has an interest." *Bersch, 519 F.2d at 989*. This is commonly referred to as the "effect test," as opposed to the "conduct test" discussed in this opinion. *See Europe & Overseas, 147 F.3d at 127-28*. Whether this Court has jurisdiction pursuant to the effects test is not presently at issue, as Judge Baer's ruling concerned only the conduct test.

B. Plaintiff's Jurisdictional Allegations

Subject matter jurisdiction may be called into question either by challenging [*12] the sufficiency of the allegations or by challenging the accuracy of the jurisdictional facts. *See Europe & Overseas, 147 F.3d at 121 n.1*. When jurisdictional facts are challenged, a court may resolve disputed fact issues by reference to evidence outside the pleadings, such as affidavits, *see Filetech S.A. v France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998)*, and no presumptive truthfulness attaches to the complaint's jurisdictional allegations. *See Guadagno v. Wallack Ader Levithan Assoc., 932 F. Supp. 94, 95 (S.D.N.Y. 1996)*. However, a court should be careful not to deprive a plaintiff of his day in court with an erroneous order dismissing the case for lack of subject matter jurisdiction. *See Europe & Overseas, 147 F.3d at 121 n.1*. Thus, in a close case, the factual basis for a court's subject matter jurisdiction may remain an issue through trial, and, if and when doubts are resolved against jurisdiction, may warrant dismissal at that time. *See id.*

Vivendi argues that, given their two affidavits, "and the lack of any contrary evidence offered by plaintiffs, it was clear error for the Court to accept plaintiffs' [*13] unsupported allegations as true for purposes of its subject matter analysis." (Reply Mem. in Further Supp. of Vivendi's Mot. for Reconsideration at 1 (hereinafter "Reply").) This Court is not convinced that all jurisdictional allegations in a complaint must be rejected whenever an affidavit is submitted disputing some of the jurisdictional allegations. The cases cited by defendant do not draw such a bright line rule. Rather, the cases instruct that an inquiry on subject matter jurisdiction should be approached in a practical manner, with the court, as fact-finder, doing whatever is appropriate to resolve the disputed issues of fact that are necessary to rule on a motion to dismiss. *See Phoenix Consulting, Inc. v. Republic of Angola, 342 U.S. App. D.C. 145, 216 F.3d 36, 40 (D.C. Cir. 2000)*. A court "can, for example, decide the matter on the basis of affidavits or it can hold an evidentiary hearing." *See Guadagno, 932 F. Supp. at 95*.

In the present case, it seems clear that Judge Baer fully considered the jurisdictional facts set forth in Vivendi's carefully circumscribed affidavits and saw no need for an evidentiary hearing. n3 Accepting these affidavits at face value, Judge [*14] Baer nevertheless concluded that the remaining jurisdictional allegations set forth in the complaint were sufficient for the Court to exercise jurisdiction under the conduct test. *See In Re Vivendi, 2003 U.S. Dist. LEXIS 19431, 2003 WL 22489764, at *6*. Specifically, the Court found that Vivendi's two principal actors, Messier and Hannezo, moved their operations to New York and spent at least half their time managing the company from the United States during a critical part of the class period. *See id.* This salient fact, combined with the detailed allegations in the complaint of a scheme authored by Messier to conceal Vivendi's deteriorating financial condition in order to fuel its acquisition program was sufficient, in Judge Baer's view, to conclude that the U.S.-based conduct was integral and not merely preparatory to the alleged fraud upon foreign purchasers of Vivendi shares on foreign exchanges. *See id.* Notably, defendants Messier and Hannezo did not submit affidavits disputing the jurisdictional allegations in the complaint. Nor can the affidavits submitted by Vivendi be read reasonably to put into dispute the role of Messier and Hannezo after they moved to New York in managing Vivendi, [*15] or in effectuating the scheme alleged in the complaint, including the issuance of a series of press releases, many of which include statements by Messier--then based in New York--that are alleged to be false and misleading. Indeed, the court notes that the Vivendi affidavits are conspicuously silent on the subject of the activities of Messier and Hannezo while they were operating Vivendi from the company's New York headquarters. Thus, there is sufficient information in the record to justify Judge Baer's findings regarding the jurisdictional allegations. For this reason, this Court denies Vivendi's motion for reconsideration on the basis that the Court erred, as a matter of law, in accepting as true plaintiffs' allegations that were not contested by defendant's affidavits.

n3 To this Court's knowledge, no such hearing was ever requested.

C. Controlling Precedent

Vivendi's second argument for reconsideration is that, under Second Circuit law, "the type of conduct in the United States alleged by plaintiffs, [*16] even if true, is plainly inadequate as a matter of law to confer subject matter jurisdiction over the claims of foreign purchasers who purchased foreign securities . . . on a foreign exchange." (Br. at 7.) The Court committed clear

error, asserts Vivendi, given that "over the past three decades, the Second Circuit has imposed an increasingly high burden on foreign plaintiffs seeking to establish jurisdiction under the 'conduct' test." (Br. at 8.)

This Court begins its analysis of the conduct test with *Bersch v. Drexel Firestone, Inc.*, where the Second Circuit considered whether foreign purchasers of stock in a Canadian corporation could file suit in the United States for alleged misrepresentations in a prospectus for a Canadian offering. *See generally Bersch, 519 F.2d at 974*. The named plaintiff in that action, Bersch, was an American national who had managed to purchase shares during the Canadian offering. *See id. at 980, 990-91*. Bersh filed a class action on behalf of all purchasers of the Canadian offering after shares in the Canadian company declined in value. *See id. at 980-81*.

The Second Circuit held that the acts alleged [*17] to have occurred in the United States--meetings in New York between underwriters, accountants, and attorneys associated with the offering; preparation of part of the allegedly fraudulent prospectus; review of the draft prospectus; and, the opening of bank accounts in New York in anticipation of deposits flowing from the offering--did not confer subject matter jurisdiction with respect to foreign plaintiffs. *See id. at 987 & 985 n.24*. The Second Circuit reasoned:

> "The fraud, if there was one, was committed by placing the allegedly false and misleading prospectus in the purchasers' hands. Here the final prospectus emanated from [foreign sources.] . . . We do not even have the oft-cited case of the shooting of a bullet across a state line where the state of the shooting as well as the state of the hitting may have an interest in imposing its law. At most the acts in the United States helped to make the gun whence the bullet was fired from places abroad". *Id. at 987*.

Though the Second Circuit ruled that there was proper subject matter jurisdiction over the claims of the American plaintiffs, the district court was directed to "eliminate [*18] from the class action all purchasers other than persons who were residents or citizens of the United States." *See id. at 991-93, 997*.

After the *Bersch* decision, courts assessing subject matter jurisdiction under the conduct test often have focused on the location from where allegedly false statements emanated and the circumstances of the statements' dissemination, since this conduct, as *Bersch* explains, typically embodies the heart of the alleged fraud. *See, e.g., Alfadda, 935 F.2d at 479* (concluding that subject matter jurisdiction existed over foreign plaintiffs' *Section 10(b)* and *Rule 10b-5* claims because defendants allegedly conveyed false information to plaintiffs in meetings and negotiations that took place in U.S.); *Cromer Finance Ltd. v. Berger, 137 F. Supp.2d 452, 480-81 (S.D.N.Y. 2001)* (finding conduct test satisfied because, *inter alia*, allegedly false statements that induced plaintiffs to invest originated in U.S. and were received by investors in the U.S.); *Societe Nationale d'Exploitation Industrielle des Tabacs et Allumettes v. Salomon Bros. Int'l., 928 F. Supp 398, 404-07 (S.D.N.Y. 1996)* (finding lack of subject matter [*19] jurisdiction because allegedly false representations that induced transaction were made and received abroad); *Nathan Gordon Trust v. Northgate Exploration, Ltd., 148 F.R.D. 105, 108 (S.D.N.Y. 1993)* (finding lack of subject matter jurisdiction because SEC filings and dissemination of some materials to U.S. investors "were merely incidental to the authorship, preparation and dissemination of the allegedly false information, all of which occurred in Canada"); *CL-Alexanders Laing & Cruickshank v. Goldfeld, 709 F. Supp. 472, 478 (S.D.N.Y. 1989)* (explaining that to satisfy conduct test, "some fraudulent statement must be alleged to have been communicated from this country").

However, the location from where allegedly false statements emanated, while important, has not been the only factor courts considered in determining whether conduct in the United States was such that the United States had "an interest in imposing its law." *Bersch, 519 F.3d at 987*. For example, in *Psimenos v. E.F. Hutton & Co.*, the Second Circuit's conclusion that defendant's activities in the United States were substantial enough to establish subject matter jurisdiction [*20] under the conduct test rested heavily on "the fact that [defendant's] agents completed the alleged fraud by trading domestic futures contracts on the American commodities exchange." *722 F.2d at 1046*. The Second Circuit did note that the document allegedly containing false statements "emanated from [defendant's] New York office." *Id.* Yet, in allowing the foreign plaintiff to proceed with his suit, the *Psimenos* court placed more weight on defendant's actions involving the U.S. exchange. n4 *See id.*

---

n4 Another example of the Second Circuit placing more weight on other factors is found in *SEC v. Berger, 322 F.3d 187 (2d Cir. 2003)*. In that case, the Second Circuit held that subject matter jurisdiction was proper because, even though the fraudulent statements emanated from

abroad, "the fraudulent scheme was masterminded and implemented" in the United States. *See id. at 194-95*. *Berger*, however, is not directly relevant to the present discussion regarding the Second Circuit's standard for foreign plaintiffs seeking to establish jurisdiction under the conduct test because plaintiff in *Berger* was a U.S. entity.

[*21]

In *Itoba*, the Second Circuit explained that the conduct and effects tests could be considered in combination in deciding whether subject matter jurisdiction was proper. *See Itoba, 54 F.3d at 122*. Holding "that the situs of preparations [of allegedly false statements] should not be determinative of jurisdictional questions," lest U.S. law be circumvented simply by preparing fraudulent statements outside the United States, the Second Circuit found that making allegedly misleading filings with the SEC was not merely preparatory and was sufficient for subject matter jurisdiction. *Id. at 123-24*.

The Second Circuit's most recent jurisdictional decision involving a foreign plaintiff, *Europe & Overseas*, "illustrates the kind of circumstances in which it is unreasonable to prescribe rules of conduct with respect to securities fraud, even when a misrepresentation is made in the United States and reliance occurs on U.S. soil." *Europe & Overseas, 147 F.3d at 131*. In that case, the Second Circuit held that "although phone calls (or any other communications into the United States) soliciting or conveying an offer to sell securities ordinarily [*22] would be sufficient to support jurisdiction, it would be inconsistent with the law of this circuit to accept jurisdiction over this dispute, because no relevant interest of the United States was implicated." *Id. at 129*. The Second Circuit based this ruling on the fact that plaintiff was "a transient foreign national" who fortuitously happened to be in the United States when he learned of the allegedly fraudulent statements. *See id. at 129-31*. Other than plaintiff's fortuitous location, the dispute had no connection whatsoever to the United States. *See id.*

Having reviewed these Second Circuit decisions, this Court does not agree with Vivendi's assertion that "over the past three decades, the Second Circuit has imposed an increasingly high burden on foreign plaintiffs seeking to establish jurisdiction under the 'conduct' test." (Br. at 8.) Rather, these cases indicate that the Second Circuit standard has remained relatively constant since the *Bersch* decision. In fact, *Europe & Overseas* is the only post-*Bersch* Second Circuit case cited by Vivendi that involves a foreign plaintiff and that finds subject matter jurisdiction lacking. However, [*23] the Second Circuit recognized that case contained "a novel factual pattern not squarely governed by any of our decisions to date." *Europe & Overseas, 147 F.3d at 129*. Neither that case nor any other Second Circuit case cited by Vivendi imposes a higher burden on foreign plaintiffs than that established by *Bersch*. Indeed, from *Bersh* to *Europe & Overseas*, the issue examined has always been the same: does the alleged conduct implicate a U.S. interest? *See Bersch, 519 F.2d at 987* ("we do not even have the oft-cited case of the shooting of a bullet across a state line where the state of the shooting as well as the state of the hitting may have an interest in imposing its law"); *Europe & Overseas, 147 F.3d at 129* ("it would be inconsistent with the law of this circuit to accept jurisdiction over this dispute, because no relevant interest of the United States was implicated").

Turning to the present case, this Court concurs with Judge Baer's opinion finding jurisdiction over this dispute pursuant to the conduct test described in *Bersch* and subsequent Second Circuit decisions. In addition to the allegedly false statements [*24] made to Wall Street analysts on which Judge Baer bases his opinion, this Court finds Messier's and Hannezo's presence and conduct in the United States of crucial importance in determining subject matter jurisdiction. Vivendi is accused of, among other things, misleading French investors. During the last 11 months of the period in which French investors claim to have been misled, Vivendi's top two officers resided in and operated the company from the United States. The United States has a strong interest in imposing its law over the conduct of corporate officers operating out of the United States. That is so even if the officers were only operating out of the United States for part of the alleged class period and even if the officers spent approximately half of their time carrying on their official functions from a non-U.S. office. n5 Messier's and Hannezo's conduct in the United States from September 2001 through August 2002 cannot be described, at this stage of the litigation, as *de minimus*. n6

---

n5 Vivendi's statement through an affidavit of a vice-president of corporate affairs that Messier and Hannezo, after moving to the Unites States, still spent approximately half their time in France and carried out many of their official functions from the Paris office is perhaps questionable given that neither Messier nor Hannezo, who are parties in this action, submitted affidavits making similar claims. [*25]

n6 Unlike *Europe & Overseas,* Messier and Hannezo were not in the United States fortuitously. They purposely moved to and operated Vivendi from the United States allegedly to better implement a fraudulent scheme.

Given prior courts' scrutiny of the location from where allegedly false statements emanated and the circumstances of the statements' dissemination, Vivendi correctly offered evidence of where and under what circumstances press releases were drafted, reviewed, and issued. However, Messier and Hannezo are not low level company employees whose actions in the United States could be deemed incidental to the alleged fraud while the heart of the alleged fraud concerned the preparation and emanation of the fraudulent statements by their subordinates in France. A corporation acts through its officers and no officers more embody a corporation than its highest officers, its CEO and CFO. Messier and Hannezo were Vivendi's highest officers. Their conduct is of prime relevance to, if not the crux of, the alleged fraud. *Cf. Berger, 322 F.3d at 194-95* (holding subject matter jurisdiction [*26] was proper because, even though the fraudulent statements emanated from abroad, "the fraudulent scheme was masterminded and implemented" in the United States). This Court concludes that Messier's and Hannezo's conduct in the United States, as alleged controlling officers of Vivendi and alleged instigators of the fraudulent scheme, significantly contributed to the alleged fraud and that such conduct directly caused foreign investors' alleged losses. *See Europe & Overseas, 147 F.3d at 128-29.*

This cases falls into the most difficult category of cases decided under the conduct test, where "activity in the United States . . . causes, or plays a substantial part in causing, harm to foreign interests overseas." *Id.* The Court recognizes that this litigation is at an early stage and that the facts on which this Court relies in satisfying itself that subject matter jurisdiction properly exists may prove to be different than presently thought. In that instance, the Court will reexamine its subject matter jurisdiction. *Cf. id. at 121 n.1* (noting that, in a close case, the factual basis for subject matter jurisdiction may remain an issue through trial, and [*27] that the case may be dismissed at the time jurisdictional doubts are resolved). With the evidence presently before the Court, the Court is satisfied as to its subject matter jurisdiction and is mindful of not depriving plaintiffs of their day in court with a premature order dismissing the case. *See id.* For these reasons, this Court denies Vivendi's motion for reconsideration on the basis that the Court erred, as a matter of law, in misapplying controlling precedent.

D. Interlocutory Appeal

Vivendi asks this Court to certify an interlocutory appeal pursuant to *28 U.S.C. § 1292(b)* if the Court denies Vivendi's motion for reconsideration on this issue. (Br. at 10.) An interlocutory appeal may be certified on a finding that the appeal "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation." *28 U.S.C. § 1292(b).* Certification under *1292(b)* is a "rare exception" to the final judgment rule and interlocutory appeals are in fact rarely reviewed by the Second Circuit. *See Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863, 865-66 (2d Cir. 1996).* [*28] Vivendi argues that the Court should certify this issue because "whether plaintiffs can meet their burden of establishing subject matter jurisdiction by relying solely on the contested allegations in the Complaint is a 'controlling question of law'." (Br. at 10.) As this Court explained above in Part III.B., the Court did not rely on allegations contested by Vivendi in determining that subject matter jurisdiction exists. For this reason, this Court denies Vivendi's request for *1292(b)* certification.

IV. Conclusion

For the above reasons, as well as the reasons stated on the record on September 20, 2004, all the motions for reconsideration are DENIED.

SO ORDERED.

Dated: New York, New York

October 19, 2004

Richard J. Holwell

United States District Judge

# TAB L

LEXSEE 2002 US DIST LEXIS 16655

BILLY YUNG and YANG YAU, Plaintiffs, -against- ANDREW LEE, et al., Defendants.

00 Civ. 3965 (DAB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2002 U.S. Dist. LEXIS 16655*

September 5, 2002, Decided

**PRIOR HISTORY:** [*1] Approving and Adopting Magistrate's Document of September 4, 2001, Reported at: *2001 U.S. Dist. LEXIS 24715*.

**DISPOSITION:** Magistrate's recommendation to dismiss case adopted and case dismissed.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Billy Yung, Yung Yau, PLAINTIFFS: Steven J Cohen, Wachtel & Masyr, New York, NY USA.

For Andrew Lee, DEFENDANT: Raymond L Vandenberg, Vandenberg & Feliu, LLP, New York, NY USA.

For BDO Seidman, LLP, DEFENDANT: Greg A Danilow, Weil, Gotshal & Manges LLP, New York, NY USA.

**JUDGES:** DEBORAH A. BATTS, United States District Judge.

**OPINIONBY:** DEBORAH A. BATTS

**OPINION:**

　　ORDER

DEBORAH A. BATTS, United States District Judge.

　　On September 4, 2001, Magistrate Judge Henry Pitman issued a Report and Recommendation recommending that Defendant's motion to dismiss be granted in one respect and Plaintiff's complaint be dismissed without prejudice. See *28 U.S.C. § 636*(b)(1)(c); Local Civil Rule 72.1(d). Parties have submitted objections, which were fully submitted December 3, 2001.

　　*28 U.S.C. § 636*(b)(1)(C) requires the Court to make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." After conducting a de novo review, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. *28 U.S.C. § 636* [*2] (b)(1)(C); see also Local Civil Rule 72.1(d).

　　The instant matter is a securities fraud action, in which Plaintiffs allege they purchased securities issued by Defendant International Transportation Network Group, Inc., due to reliance upon Defendants' alleged material misrepresentations and omissions. The facts in this matter are sufficiently set forth in Judge Pitman's Report and Recommendation and will not be repeated here.

　　Judge Pitman recommends that (1) Defendant BDO Binder and BDO International's motion to dismiss for lack of subject matter jurisdiction be denied due to sufficient activity in the United States to satisfy the conduct test; and (2) the action be dismissed pursuant to the doctrine of forum non conveniens, if all defendants consent to the jurisdiction of the courts of Hong Kong. n1

- - - - - - - - - - - - - - - - - -

n1 Judge Pitman makes additional alternative recommendations regarding BDO Seidman's motion to dismiss for failure to plead fraud with

particularity and failure to state a claim, and those recommendations are discussed infra.

[*3]

Regarding federal subject matter jurisdiction, Defendants BDO International and BDO Binder (collectively "BDO International") object that Judge Pitman misconstrued the prevailing test in the Second Circuit which is applied to matters where the securities transactions were primarily foreign in nature. Specifically, BDO International argues that Judge Pitman incorrectly utilized separate "conduct" and "effects" tests, despite the Second Circuit's admonition that the two tests should be applied as an "admixture" to prevent "mechanical application". See BDO Int. Obj. at 4. Correctly conflating the two tests, according to BDO International, and properly distinguishing the facts of *Itoba Ltd. v. LEP Group PLC, 54 F.3d 118, 121-22 (2d Cir. 1995)*, mandates a conclusion on these facts that no domestic "effects" exist to confer subject matter jurisdiction on this Court.

This Court does not agree. As Judge Pitman correctly noted, in assessing jurisdiction, the Second Circuit has held that the relevant factors are conduct, effects, or a combination thereof. See *Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London, 147 F.3d 118, 127-28 (2d Cir. 1998)*. [*4] Regardless of which test is utilized, the guide is always the underlying policy query of "whether there is sufficient United States involvement to justify the exercise of jurisdiction by an American Court." *Itoba, 54 F.3d at 122*. The fact that both Plaintiff and Defendant are foreign is not dispositive. See *id. at 123* ("The conduct test does not center its inquiry on whether domestic investors or markets are affected, but on the nature of conduct within the United States as it relates to carrying out the alleged fraudulent scheme....")(quoting *Psimenos v. E.F. Hutton & Co., 722 F.2d 1041, 1045 (2d Cir. 1983)*). Moreover, contrary to the assertions of Defendant BDO International, the United States SEC filings of ITNG are the source of the alleged substantial misrepresentations of fraud with a purported deleterious effect on current and potential investors. The fact that the instant Plaintiffs, as foreign residents and investors, cannot and do not make any claims on behalf of domestic investors is not determinative of jurisdictional questions. To hold otherwise would be to allow the "admixture" of the conduct and/or effect tests set forth [*5] by the Second Circuit to be held hostage by Plaintiff's inability to affirmatively allege domestic effects. Such a conclusion is inimical to the concerns governing the application of federal securities laws to foreign securities transactions in the first place. Accordingly, all of the facts cited by Judge Pitman, R&R at 18-20, weighed as a whole, support an exercise of jurisdiction by this Court.

Moving on to the second recommendation that the action be dismissed pursuant to the doctrine of forum non conveniens, Plaintiff objects that Magistrate Judge Pitman "upended the strong presumptions against such dismissals, misconceived the location of plaintiffs' injury, underestimated the many business and family connections between plaintiffs and United States, overlooked the substantial importance of this case to United States investors, misconstrued the importance of witnesses, documents, and the language in this matter, and erroneously permitted various defendants to benefit from ITNG's failure to comply with its contractual duties under the forum selection clause." Pl.'s Obj. at 6-7. Plaintiff's argument is unpersuasive. Despite the strong favorable presumption applied to the [*6] Plaintiff's choice of forum, the factors elucidated in *Alfadda v. Fenn, 159 F.3d 41 (2d Cir. 1998)*, weigh overwhelmingly in support of dismissing the action in favor of a forum in Hong Kong. Hong Kong has uniformly been considered an adequate alternative forum for commercial disputes, see R&R at 22-23, and Plaintiffs have adduced no facts or case law to the contrary. Further, Plaintiff's attempts to characterize the true situs of the harm as the Southern District of New York rather than China are unavailing. While this Court agrees that the allegedly fraudulent SEC filing by ITNG has potential domestic impact, that impact is dwarfed by the vast majority of conduct in and impact upon China. This case is clearly distinguishable from the Second Circuit's decision in *DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 2002 U.S. App. LEXIS 5622, 2000 WL 33725106, at *5 (2d Cir. 2002)*, where in addition to filing statements with the SEC, the Defendant in that case "conducted the bulk of its business in the United States" and the Plaintiffs were United States citizens, most of whom engaged in their stock transactions within the United States.

Similarly, Magistrate Judge Pitman correctly found [*7] that the private interest factors weigh in favor of dismissal pursuant to forum non conveniens, despite Plaintiff's self-serving assumptions that the need for document discovery is virtually non-existent and regardless of their mention in the Complaint, only a "handful of relevant witnesses in this matter are domiciled in China." Pl.'s Obj. at 11. Taken as a whole, the factors delineated by Judge Pitman support a dismissal on the grounds of forum non conveniens. n2

n2 Plaintiff's argument that a forum selection clause in a purchase agreement between Plaintiff and the defaulting Defendant ITNG somehow

binds the other non-party Defendants is specious. See R&R at 35-6.

A more difficult question arises regarding the propriety of conditioning the dismissal on the consent of all Defendants to jurisdiction in Hong Kong. It is certainly true that courts routinely condition forum non conveniens dismissals in order to protect the party opposing dismissal from being left with no remedy. See *Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 984 (2d Cir. 1993)* [*8] (collecting cases). However, such conditions are appropriate only where the foreign court would not provide an adequate alternative in the absence of such a condition. See *Jota v. Texaco, Inc., 157 F.3d 153, 160 (2d Cir 1998)*(holding that whether an adequate forum exists in the foreign nation depends upon whether the defendant is subject to or has consented to the assertion of jurisdiction against it in the foreign forum")(emphasis added); In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in *Dec., 809 F.2d 195, 203-4 (2d Cir. 1987)*("The first condition, that UCC consent to the Indian court's personal jurisdiction over it and waive the statute of limitations as a defense, are not unusual and have been imposed in numerous cases where the foreign court would not provide an adequate alternative in the absence of such a condition"); *Constructora Spilimerg, C.A. v. Mitsubishi Aircraft Co., Inc., 700 F.2d 225, 226 (5th Cir. 1983)*(conditioning dismissal where "it is not clear that the Venezuelan court urged by the seller as most practicable has personal jurisdiction over the seller"). Even when the district court "justifiably [*9] believes" that there is an adequate alternative forum, it is "advisable to make any dismissal conditional in nature when there is uncertainty or conflict between expert opinions with regard to foreign jurisdictional law." *Schertenleib v. Traum, 589 F.2d 1156, 1163 (2d Cir. 1978)*.

Judge Pitman expressed some concern about whether all the Defendants would be subject to jurisdiction in China. See R&R at 38. n3 It appears clear to the Court that while it is likely, there is still some doubt as to the ability of Plaintiffs to submit Defendants to the jurisdiction of the Hong Kong courts. See BDO Seidman Obj at 8-9 (discussing difference of opinion between Plaintiff and Defendant BDO International's expert on issue of Hong Kong jurisdiction). Consequently, in an excess of caution, a conditional dismissal is appropriate to protect the Plaintiff's interest.

n3 Judge Pitman considers the issue of whether all defendants are subject to jurisdiction in China as part of a final balancing of factors. However, this Court believes the inquiry is more appropriately considered under the threshold determination that an adequate alternative forum exists. See *Alfadda, 159 F.3d 41, 45-46 (2d Cir. 1998)*.

[*10]

All Defendants, with the exception of BDO Seidman n4, consent to jurisdiction in Hong Kong. See Weisz Aff P2, BDO International Obj. at 9-10. BDO Seidman does not wish to consent at this juncture, arguing that it would be inequitable to require a decision now when Seidman's motion to dismiss for failure to state a claim remains unresolved. See Weisz Aff P3. This Court agrees, and will move to the merits of BDO Seidman's motion to dismiss.

n4 Defendant ITNG has never appeared in this action and accordingly, a default judgment was entered against it on November 14, 2000.

Judge Pitman has recommended that all four claims brought against BDO Seidman (First, Third, Fifth and Sixth) be dismissed: the First and Fifth Claims with prejudice for failure to state claims upon which relief can be granted; the First (to the extent it is based upon fraud), Third and Sixth for failure to meet the particularity requirement of Rule 9(b) with leave to replead. Plaintiff objects to the dismissals based on Rule 9(b), arguing [*11] that evidence of BD Seidman's participation in the fraudulent conduct lies solely within its own knowledge and control and Plaintiff should be subject to less stringent particularity requirements at this stage of the pleading. See Pl.'s Obj at 14. However, as Judge Pitman correctly found, the group pleading doctrine does not apply here based upon the attenuated relationship between BDO Seidman and the transaction at issue or the issuer. See R&R at 45-46. Plaintiff's reiteration of its argument that it is in no position to adduce facts that would meet the Rule 9(b) pleading requirements leads this Court to believe that indeed, no amount of repleading will allow Plaintiff to adduce facts sufficient to state a claim of fraud against Defendant BDO Seidman. See Pl.'s Obj at 15 ("The precise contours of BDO Seidman's relationship with BDO International and ITNG is known only to itself, and cannot be pleaded with greater specificity at this time.").

The Court also concurs with Judge Pitman's finding that the First and Fifth claims are appropriately dismissed pursuant to *Fed.R.Civ.P. 12(b)(6)*. The overwhelming weight of authority holds that Section 12(a)(2) does not reach private [*12] transactions and Plaintiffs have proffered no relevant case to the contrary. See R&R at 47-50. Moreover, Plaintiffs do not meet the

pleading requirements to assert a claim for negligent performance of accounting duties. See *Securities Investor Protection Corp. v. BDO Seidman, LLP, 222 F.3d 63, 73-74 (2d Cir. 2000)*; R&R at 5051 . Having reached the merits of BDO Seidman's motion to dismiss and given the paucity of allegations connecting said Defendant to the alleged fraud, equitable considerations weigh in favor of dismissing BDO Seidman from the action and then granting the motion of the remaining defendants to dismiss pursuant to forum non conveniens. See, e.g., *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,85 F. Supp. 2d 282, 291 (S.D.N.Y. 2000)*(dismissing claims against one defendant outright and then granting other defendants' motion to dismiss pursuant to forum non conveniens).

Accordingly, for the foregoing reasons, it is ORDERED AND ADJUDGED as follows:

1. The Report and Recommendation of United States Magistrate Judge Pitman dated September 4, 2001 be and the same hereby is approved, adopted, and ratified by the Court [*13] of Judge Pitman's recommendation that Defendants BDO International and BDO Binder's motion to dismiss the complaint for lack of subject matter jurisdiction be DENIED;

2. The Report and Recommendation of United States Magistrate Judge Pitman dated September 4, 2001 be and the same hereby is approved, adopted, and ratified by the Court of Judge Pitman's recommendation that BDO Seidman's motion to dismiss pursuant to Rules 9(b) and 12(b)(6) be GRANTED n5;

> n5 Specifically, BDO Seidman's motion to dismiss the First Claim, to the extent it is based on fraud, the Third Claim and the Sixth Claim is granted with leave to amend. Plaintiff's First and Fifth Claims are dismissed for failure to state claims on which relief can be granted.

3. The Report and Recommendation of United States Magistrate Judge Pitman dated September 4, 2001 be and the same hereby is approved, adopted, and ratified by the Court of Judge Pitman's recommendation that Defendants BDO International and BDO Binder's motion to dismiss the complaint pursuant [*14] to the doctrine of forum non conveniens be GRANTED in favor of jurisdiction in Hong Kong;

3. The Clerk of the Court is directed to close this case. SO ORDERED

DATED: New York, New York

September 5, 2002

DEBORAH A. BATTS

United States District Judge