## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------------x
MARKUS BLECHNER, Individually and on        :    Civil Action No. 04-331 (JJF)
Behalf of All Others Similarly Situated,    :
                                            :
                Plaintiff,                  :
                                            :
        v.                                  :
                                            :
DAIMLER-BENZ AG, DAIMLERCHRYSLER            :
AG, JÜRGEN SCHREMPP, ECKHARD                :
CORDES, MANFRED GENTZ, JÜRGEN               :
HUBBERT, MANFRED BISCHOFF, KURT             :
LAUK, KLAUS MANGOLD, HEINER                 :
TROPITZSCH, KLAUS-DIETER                    :
VOHRINGER, DIETER ZETSCHE and               :
THOMAS SONNENBERG,                          :
                                            :
                Defendants.                 :
-----------------------------------------------------------------x
```

## REPLY BRIEF OF DAIMLERCHRYSLER AG AND DAIMLER-BENZ AG IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

OF COUNSEL:
Jonathan J. Lerner
Lea Haber Kuck
Joseph N. Sacca
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Dated: June 2, 2005

Thomas J. Allingham II (#0476)
Robert S. Saunders (#3027)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Defendants DaimlerChrysler
AG and Daimler-Benz AG

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     THE COURT LACKS SUBJECT MATTER JURISDICTION . . . . . . . 2

         A.    The Federal Securities Laws Do Not Confer Subject Matter
                 Jurisdiction Over the Claims of the Foreign Investors . . . . . . . . 2

         B.    Subject Matter Jurisdiction Does Not Exist
                 Under the Judicially Created Tests . . . . . . . . . . . . . . . . . . . . . . 4

              1.    The Foreign Investors Cannot Satisfy the Effects Test . . . 4

              2.    The Foreign Investors Have Not Satisfied the Conduct
                     Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              3.    So-Called "Tipping Factors" Do Not Support
                     Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    II.    INTERNATIONAL COMITY AND FOREIGN POLICY
           FAVOR DISMISSAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    III.   THE FOREIGN INVESTORS' CLAIMS ARE UNTIMELY . . . . . . . . 14

    IV.   THE "MERGER OF EQUALS" ALLEGATIONS FAIL TO
           STATE A CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    V.    THE FOREIGN INVESTORS HAVE FAILED TO ALLEGE
           LOSS CAUSATION SUFFICIENTLY . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

Asplundh Tree Expert Co. v. NLRB, 365 F.3d 168 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 2

In re Baan Co. Securities Litigation, 103 F. Supp. 2d 1 (D.D.C. 2000) . . . . . . . . . . . . . . . . 5

Biovail Corp. International v. Hoechst AG, 49 F. Supp. 2d 750, 775 n.9 (D.N.J.
    1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re DaimlerChrysler Securities Litigation, 216 F.R.D. 291 (D. Del. 2003) . . . . . . . . . 15, 16

Davis v. Social Securities Administration, No. Civ. A. 02-1595, 2003 WL
    21219821 (D. Del. May 20, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Dura Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627 (2005) . . . . . . . . . . . . 2, 17, 18, 19, 20

Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London, 147
    F.3d 118 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

F. Hoffman-La Roche Ltd. v. Empagran S.A., 124 S. Ct. 2359 (2004) . . . . . . . . 2, 3, 4, 13, 14

Froese v. Staff, No. 02 CV 5744, 2003 WL 21523979 (S.D.N.Y. July 7, 2003) . . . . . . . . 10

In re Gaming Lottery Securities Litigation, 58 F. Supp. 2d 62 (S.D.N.Y. 1999) . . . . . . . 9, 11

Kaufman v. Campeau Corp., 744 F. Supp. 808 (S.D. Ohio 1990) . . . . . . . . . . . . . . . . . . . . 5

Koal Industrial Corp. v. Asland, S.A., 808 F. Supp. 1143 (S.D.N.Y. 1992) . . . . . . . . . . . . . 5

Korwek v. Hunt, 827 F.2d 874 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

McNamara v. Bre-X Minerals Ltd., 32 F. Supp. 2d 920 (E.D. Tex. 1999) . . . . . . . . . . . . . . 5

N.A.I.F., Inc. v. Snyder, No. Civ. A. 03-506-JJF, 2005 WL 735554 (D. Del. Mar.
    30, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Nasser v. Anderson Worldwide Societe Cooperative, No. 02 Civ. 6832 2003 WL
    22179008 (S.D.N.Y. Sept. 23, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Navarre Corp. Securities Litigation, 299 F.3d 735 (8th Cir. 2002) . . . . . . . . . . . . . . . 7

Paraschos v. YBM Magnex International, Inc., No. Civ. A. 98-6444, 2000 WL
    325945 (E.D. Pa. Mar. 29, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Quarterdeck Office Systems, Inc. Securities Litigation, No. CV-92-3970-
    DWW, 1994 WL 374452 (C.D. Cal. Mar. 24, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Robbins v. Amoco Production Co., 952 F.2d 901 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . 17

Robinson v. TCI/US West Communications, 117 F.3d 900 (5th Cir. 1997) . . . . . . . . . . . . . 6

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SEC v. Berger, 322 F.3d 187 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SEC v. Kasser, 548 F.2d 109 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

Shields v. Washington Bancorporation, Civ. A. No. 90-1101, 1992 WL 88004
    (D.D.C. Apr. 7, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Torres v. Southern Peru Copper Corp., 965 F. Supp. 899 (S.D. Tex. 1996), aff'd,
    113 F.3d 540 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Tracinda Corp. v. DaimlerChrysler AG, 364 F. Supp. 2d 362 (D. Del. 2005) . . . . . . . 2, 7, 17

Tri-Star Farms Ltd. v. Marconi, PLC, 225 F. Supp. 2d 567 (W.D. Pa.
    2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 9, 10, 11

In re Vivendi Universal, S.A. Securities Litigation, No. 02 Civ. 5571, 2003 WL
    22489764 (S.D.N.Y. Nov. 3, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Yang v. Odom, 392 F.3d 97 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14, 16

Defendants Daimler-Benz and DaimlerChrysler (collectively, "defendants") respectfully submit this brief in further support of their motion to dismiss the Complaint.[1]

## PRELIMINARY STATEMENT

There simply is no valid reason for this action to proceed in this Court. The lead plaintiffs here are two Austrian investment firms that acquired shares of DaimlerChrysler, a German stock corporation, in transactions on German stock exchanges. They seek to maintain this action under the United States securities laws on behalf of a putative class of investors who, by definition, have no connection to the United States. The putative class members are <u>not</u> United States residents or citizens, and each of them acquired stock on or through exchanges <u>outside</u> the United States. Under these circumstances, the United States securities laws do not provide for the exercise of jurisdiction.

Even if subject matter jurisdiction existed, the Foreign Investors' claims would be time-barred. Contrary to their assertion, the <u>American Pipe</u> tolling doctrine provides them no shelter. As the Third Circuit recently held, <u>American Pipe</u> tolling only applies to the filing of a new class action if a court declined to certify the class in a prior suit due to deficiencies of the proposed class representatives. <u>See Yang v. Odom</u>, 392 F.3d 97, 99 (3d Cir. 2004). Here, however, the Foreign Investors' claims were not tolled because the Court excluded them from the Original Class based on <u>deficiencies in the putative class itself</u>, not deficiencies of the class representatives.

Finally, even if jurisdiction existed in this Court to hear the Foreign Investors' claims, which it does not, and even if the claims were not time-barred by the applicable

---

[1]    Capitalized terms not defined herein shall have the meaning ascribed to them in defendants' opening brief ("Def. Br."). Plaintiffs' Brief in Opposition to the Motion of DaimlerChrysler AG and Damiler-Benz AG to Dismiss the Complaint is cited as "Pl. Br."

statute of limitations, which they are, the Foreign Investors' allegations of fraud in connection with the term "merger of equals" fail to state a claim. See Tracinda Corp. v. DaimlerChrysler AG, 364 F. Supp. 2d 362, 400 (D. Del. 2005). Moreover, the Acquirors' claims also fail as a matter of law because the Foreign Investors fail adequately to allege loss causation, as required by the Supreme Court's recent decision in Dura Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627 (2005).

## ARGUMENT

### I.   THE COURT LACKS SUBJECT MATTER JURISDICTION.

#### A.   The Federal Securities Laws Do Not Confer Subject Matter Jurisdiction Over the Claims of the Foreign Investors.

When interpreting legislation, courts must "'assume that Congress legislates against the backdrop of the presumption against extraterritoriality.'" Asplundh Tree Expert Co. v. NLRB, 365 F.3d 168, 173 (3d Cir. 2004) (quoting EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991)). The Supreme Court recently emphasized the strength of this presumption by holding that any ambiguity in federal statutes concerning their extraterritorial reach should be resolved "to avoid unreasonable interference with the sovereign authority of other nations" – i.e., unless clearly stating otherwise, statutes should be interpreted not to have extraterritorial reach. F. Hoffman-La Roche Ltd. v. Empagran S.A., 124 S. Ct. 2359, 2366 (2004). In other words, unless the "'affirmative intention of Congress [to apply a statute extraterritorially is] clearly expressed,'" it must be presumed Congress "'is primarily concerned with domestic conditions.'" Asplundh Tree Expert Co., 365 F.3d at 173 (quoting Arabian Am. Oil Co., 499 U.S. at 248).

The federal securities laws are silent on the issue of their extraterritorial application. See Tri-Star Farms Ltd. v. Marconi, PLC, 225 F. Supp. 2d 567, 572 (W.D. Pa. 2002). Because Congress expressed no "affirmative intention" to apply the securities laws extraterritorially, and ambiguous statutes should be construed "to avoid unreasonable interference with the sovereign authority of other nations," F. Hoffman-La Roche, 124 S. Ct. at 2366, no basis exists to conclude the securities laws provide the Court with subject matter jurisdiction here.

The Foreign Investors do not dispute any of these rules of statutory construction, or claim that the federal securities laws address, much less assert, extraterritorial jurisdiction. Instead, they rely on the Third Circuit's decision, issued almost thirty years ago, in SEC v. Kasser, 548 F.2d 109 (3d Cir. 1977). (See Pl. Br. at 19.) Their reliance on Kasser is misplaced.

In Kasser, the Third Circuit held that although the Exchange Act suggests no intent by Congress to extend its reach to investors outside of the United States, it would "decline to immunize, for strictly jurisdictional reasons, defendants who unleash from this country a pervasive scheme to defraud a foreign corporation."[2]   548 F.2d at 114 & n.21. Because the Third Circuit decided Kasser nearly 30 years ago, it obviously did not (and, indeed, could not) consider the significant concerns created by extraterritorial application of United States laws in today's "interdependent commercial world" that informed the Supreme Court's recent decision in F. Hoffman-La Roche. See 124 S. Ct. at 2366.

In F. Hoffman-La Roche, the Supreme Court emphasized the need to interpret federal laws so as not to interfere with the sovereign authority of other countries:

---

[2]   As will be discussed below, the defendants here did not launch a pervasive fraudulent scheme from this country and there is no allegation that they did.

> This rule of statutory construction cautions courts to assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws. It thereby helps the potentially conflicting laws of different nations work together in harmony – a harmony particularly needed in today's highly interdependent commercial world.

Id. The Supreme Court's reasoning applies with particular force here and compels the conclusion that the federal securities laws do not provide subject matter jurisdiction over the claims of the Foreign Investors. In today's "interdependent commercial world," United States securities laws should not supplant determinations of a sovereign such as Germany about how best to protect its citizens from alleged fraud engaged in by corporations formed under its law, relating to securities traded on its exchanges.

### B.    Subject Matter Jurisdiction Does Not Exist Under the Judicially Created Tests.

Despite the presumption against extraterritorial application of United States laws and the absence of any explicit statutory authority to extend jurisdiction over the claims of foreign plaintiffs who purchased foreign securities on foreign exchanges, in certain narrow circumstances some courts have nevertheless judicially extended the application of the securities laws to cover certain securities transactions that are essentially foreign in nature. See Tri-Star Farms, 225 F. Supp. 2d at 572-73 (citing Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 985 (2d Cir. 1975)). Two basic tests for this narrow extension of subject matter jurisdiction have been developed – the "effects test" and the "conduct test." Tri-Star Farms, 225 F. Supp. 2d at 572-73. Contrary to the Foreign Investors' contentions, they satisfy neither.

### 1.    The Foreign Investors Cannot Satisfy the Effects Test.

"The 'effects test' considers whether conduct outside the United States has had a substantial adverse effect on United States investors or United States securities markets."

4

Tri-Star Farms, 225 F. Supp. 2d at 573.  It is well-settled that the "effects test" is inapplicable where, as here, the putative class consists solely of foreign plaintiffs.  See id.; In re Baan Co. Sec. Litig., 103 F. Supp. 2d 1, 11 (D.D.C. 2000); Koal Indus. Corp. v. Asland, S.A., 808 F. Supp. 1143, 1155 (S.D.N.Y. 1992).

No support exists for the Foreign Investors' insensible contention that the effects test is satisfied because defendants' alleged conduct had a "substantial impact" on American investors, whose claims already have been addressed in a separate case and who are not, nor could be, members of the putative class here.  (See Pl. Br. at 14.)  On the contrary, courts uniformly have held that foreign plaintiffs cannot shoehorn claims involving foreign securities transactions into United States courts by simply pointing to the alleged losses of domestic investors.  See Tri-Star Farms, 225 F. Supp. 2d at 573 (finding no "domestic effects" where "investors were not American investors, they did not purchase their securities on an American exchange, and they did not suffer the effects of [defendant's] alleged conduct within the United States"); McNamara v. Bre-X Minerals Ltd., 32 F. Supp. 2d 920, 923-24 (E.D. Tex. 1999) (holding that Canadian plaintiffs "obviously would not have standing to assert any adverse effect on American investors or securities markets"); Kaufman v. Campeau Corp., 744 F. Supp. 808, 810 (S.D. Ohio 1990) (alleged fraudulent act in Canada that "may have adversely affected American investors and markets" insufficient to confer jurisdiction).

None of the cases on which the Foreign Investors rely involved situations where, as here, all domestic effects had already been ameliorated.  (See Pl. Br. at 14-16.) Here, there are no, and can be no, existing domestic effects that a United States court should be concerned about remedying because the claims of all United States residents and citizens who were Chrysler shareholders, and all persons (regardless of their citizenship or residency)

5

smth

who acquired DaimlerChrysler shares on United States exchanges have already been resolved through the Settlement with the Original Class. That settlement was concluded after this Court certified a domestic class and specifically carved out the Foreign Investors.

In the final analysis, it is the Foreign Investors – not defendants – who fundamentally misconstrue the effects test. Because the putative class consists solely of foreign plaintiffs and there are <u>no</u> domestic effects, the effects test is not met here.

## 2.    **The Foreign Investors Have Not Satisfied the Conduct Test.**

The Foreign Investors fare no better under the "conduct" test. They argue that the Third Circuit's decision in <u>Kasser</u> requires a court to "'grant jurisdiction in transnational securities cases where at least <u>some activity</u> designed to further a fraudulent scheme occurs within this country.'" (Pl. Br. at 7 (quoting <u>Kasser</u>, 548 F.2d 114) (emphasis added).) Their reading of <u>Kasser</u> is entirely too superficial because "language elsewhere in <u>Kasser</u> indicates that the level of domestic conduct, at the very least, must be <u>significant and material to the fraud</u>." <u>Tri-Star Farms</u>, 225 F. Supp. 2d at 576 (citing <u>Kasser</u>, 548 F.2d at 115 n.26, 116) (emphasis added). "'Merely preparatory' or insubstantial conduct is not enough." <u>Id.</u> (citing <u>Kasser</u>, 548 F.2d at 115).[3] Morever, as discussed in defendants' opening brief, there is ample legal support to apply the Second Circuit's "direct causation" test – <u>i.e.</u>, the alleged domestic

---

[3]    The Foreign Investors assert that "the Third Circuit test is the most relaxed for the extraterritorial application of the federal securities laws . . . ." (<u>See</u> Pl. Br. at 7 n.6.) The cases they cite, however, do not support this assertion. Although the Foreign Investors cite <u>Robinson v. TCI/US West Communications</u>, 117 F.3d 900, 906 (5th Cir. 1997), for the proposition that the Third, Eighth and Ninth Circuits "require some lesser quantum of conduct" than other circuits (Pl. Br. at 7 n.6.), <u>Robinson</u> actually states that these circuits all require that the conduct be "significant" to the alleged fraud. <u>Id.</u> at 906. <u>Paraschos v. YBM Magnex Int'l, Inc.</u>, No. Civ. A. 98-6444, 2000 WL 325945 (E.D. Pa. Mar. 29, 2000), like <u>Robinson</u>, also holds that the domestic conduct must be "significant to the fraud." <u>Id.</u> at *4.

conduct must directly cause the loss complained of in the complaint – to cases brought within the Third Circuit. (See Def. Br. at 14. n.9.)[4]

Here, the Foreign Investors have not, and cannot, demonstrate that the conduct in the United States was "significant and material" to the alleged fraud, let alone that it directly caused the damages alleged. The putative class consists entirely of foreign investors who acquired their shares of DaimlerChrysler, a German stock corporation, on or through foreign exchanges and allegedly in reliance on purportedly false public statements that originated mainly in Germany.[5]  (Compl. ¶¶ 1-10).  Indeed, it bears emphasis that DaimlerChrysler filed with the German exchanges through which Lead Plaintiffs obtained their shares a separate German offering prospectus distinct from the registration statement it filed in the United States – a point the Foreign Investors have conspicuously chosen to ignore in their brief.[6]

---

[4]    Considering that the Foreign Investors rely predominantly on cases from within the Second Circuit to support their arguments in favor of jurisdiction, their contention that the Second Circuit's "direct causation" standard is not applicable in the Third Circuit is, at best, incongruous.

[5]    The Foreign Investors acknowledge that United States-based statements made in connection with the Merger were made by Chrysler's United States management. (Pl. Br. at 9 n.8.) Nevertheless, they argue that these statements should be attributed to defendants for the purpose of establishing subject matter jurisdiction. As this Court recently held, "[a] defendant cannot be held liable for the independent representations of a third party, even where those representations are attributed to the defendant, unless the defendant 'exercised the kind of control [over the third party's statements] that would render it liable for [those] statements.'" Tracinda, 364 F. Supp. 2d at 395 (quoting Raab v. Gen. Physics Corp., 4 F.3d 286, 289 (4th Cir. 1993)). Here, the Foreign Investors make no allegations sufficient to attribute any alleged statements by Chrysler's United States management to defendants, let alone to establish that defendants exercised "control" over Chrysler's managers. Significantly, both cases cited by the Foreign Investors in support of their theory involved the issue of whether statements by non-party analysts can be attributed to defendants for the purpose of stating a claim for securities fraud – subject matter jurisdiction was never discussed. See Rombach v. Chang, 355 F.3d 164, 174-75 (2d Cir. 2004); In re Navarre Corp. Sec. Litig., 299 F.3d 735 (8th Cir. 2002). Indeed, the Foreign Investors do not cite, and defendants are not aware of, any case which has held that statements by non-parties may be attributed to defendants for the purpose of establishing subject matter jurisdiction.

[6]    Further, the Foreign Investors resort to mischaracterizing their own complaint in arguing that "most crucially, the Registration Statement/Proxy-Prospectus that forms the basis for many of the claims in the Complaint was drafted jointly in the United States and Germany, filed in the United States, and was mailed throughout the world, both in the United States and abroad." (Pl. Br. at 9.) The Complaint actually alleges that the "Registration Statement/Proxy-Prospectus" was "prepared by Daimler-Benz in Germany and Chrysler (who is not a defendant in this action) in the United

7

The Foreign Investors argue that the conduct test is nevertheless satisfied because "[i]t is obvious from the Complaint that the 'center of gravity' of the alleged fraud was the United States."[7] (Pl. Br. at 8.) None of the allegations on which they rely support a finding of subject matter jurisdiction.

First, the Foreign Investors argue that the Court has subject matter jurisdiction because the alleged fraud[8] was directed toward the largely American shareholders of Chrysler in order to persuade them to vote in favor of the Merger. (Pl. Br. at 8, 12.) In doing so, they simply ignore that these domestic shareholders are <u>not</u> members of the putative class and have, in fact, already been compensated through defendants' Settlement with the Original Class, which included <u>all</u> United States residents and citizens who were Chrysler shareholders and all persons who acquired their DaimlerChrysler shares on United States exchanges. (<u>See</u> Def. Br. at 9.)

The Foreign Investors also argue that subject matter jurisdiction exists because the alleged fraud involved a merger between Daimler-Benz and Chrysler, a "bell-whether [sic] American company." (Pl. Br. at 8.) Merely alleging that the fraud involved the merger of a German company with a United States company is woefully insufficient to establish the "significant and material" United States-based conduct necessary under the conduct test to extend the reach of the United States securities laws to the Foreign Investors

---

States." (Compl. ¶ 63.) The Court must reject the Foreign Investors' attempt to rewrite the Complaint in their brief in order to survive this motion. <u>See Biovail Corp. Int'l v. Hoechst AG</u>, 49 F. Supp. 2d 750, 775 n.9 (D.N.J. 1999) (holding that court would not consider claims made in brief but not in complaint because "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting <u>Pa. ex rel. Zimmerman v. PepsiCo, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988)).

[7]   The Foreign Investors do not provide, and defendants are not aware of, any support for a so-called "center of gravity" test in the context of a subject matter jurisdiction analysis.

[8]   In referring to the Foreign Investors' allegations of "fraud," defendants in no way concede (and, in fact, vehemently deny) that they engaged in fraudulent conduct or committed any violations of the federal securities laws.

who bought their shares on foreign exchanges. Tri-Star Farms, 225 F. Supp. 2d at 576 (citing Kasser, 548 F.2d at 115).[9]

The Foreign Investors erroneously cite In re Gaming Lottery Sec. Litig., 58 F. Supp. 2d 62 (S.D.N.Y. 1999), in support of their argument. (Pl. Br. at 11 (quoting Gaming Lottery, 58 F. Supp. 2d at 74) (emphasis added).) Although the "Complaint revolve[d] around [the] acquisition of United States companies," nowhere does the court suggest, much less state, that jurisdiction existed merely because the defendant acquired American companies. Gaming Lottery, 58 F. Supp. 2d at 74. On the contrary, the court went on to extensively detail the defendants' "activities within this nation's borders" that formed the "very factual predicates of fraud which lie at the heart of the plaintiffs' case." Id. In contrast, these substantial "activities within the nation's borders" are lacking here and the Foreign Investors have not been able to allege any.

In re Vivendi Universal, S.A. Sec. Litig., No. 02 Civ. 5571, 2003 WL 22489764 (S.D.N.Y. Nov. 3, 2003), does not help the Foreign Investors either. In Vivendi, class plaintiffs alleged that a French company took on $21 billion in debt in order to acquire several United States companies while fraudulently assuring investors it had sufficient cash flow to manage the debt. Id. at *6. The court found subject matter jurisdiction because two of the principal actors in the scheme (both French executives) moved to the United States "allegedly to better direct corporate operations and more effectively promote misleading perceptions," id., and not, as the Foreign Investors allege, simply because the alleged fraud involved the acquisition of United States companies. Here, there are no similar allegations.

---

[9]    Moreover, as the Foreign Investors essentially concede, the putative class is overwhelmingly comprised of foreign persons who acquired their DaimlerChrysler shares after the Merger on foreign exchanges, not former Chrysler shareholders who exchanged their shares. Because Chrysler shareholders were mostly American (see Pl. Br. at 9, 12) and Chrysler was not widely traded on exchanges outside of the United States, the claims of most former Chrysler shareholders were resolved in the Settlement.

Nor do the allegations that DaimlerChrysler maintains one of its two operational headquarters in Michigan and does a substantial amount of business in the United States support a finding of subject matter jurisdiction. See Tri-Star Farms, 225 F. Supp. 2d at 578 n.12 (holding that "the mere fact that [Defendants] carr[y] on substantial business operations in the United States is not, in itself, sufficient to confer subject-matter jurisdiction under the securities laws"); Nasser v. Anderson Worldwide Societe Coop., No. 02 Civ. 6832 2003 WL 22179008, at * 5 (S.D.N.Y. Sept. 23, 2003) ("In the transnational securities context, . . . a defendant's U.S. citizenship or U.S. presence alone has been deemed insufficient to confer subject matter jurisdiction without additional connections, such as U.S. conduct or effects."); Froese v. Staff, No. 02 CV 5744, 2003 WL 21523979, at *1-2 (S.D.N.Y. July 7, 2003) (no subject matter jurisdiction over claims by foreign purchasers notwithstanding facts that foreign defendant corporation's wholly-owned subsidiary was a Delaware corporation with its principal place of business in New York and individual defendants were former officers of that U.S. subsidiary).

Finally, the Foreign Investors' allegation that "the fraud was effected through Defendants' actions to dismantle the American company's management structure" (Pl. Br. at 8) likewise fails to support subject matter jurisdiction. As alleged in the Complaint (as distinguished from the Foreign Investors' attempt to reinvent their claims in their brief), the claimed fraud here occurred through purportedly false public statements the Foreign Investors claim were designed to induce Chrysler shareholders "to accept inadequate merger consideration" (see Compl. ¶¶ 1-10) – not through the "dismantl[ing]" of Chrysler's management structure which followed the alleged fraud, according to the Foreign Investor' own theory. In all events, "[s]imply making [allegedly] fraudulent statements about what is happening in the United States does not make those statements 'United States conduct' for

10

purposes of the conduct test." <u>Tri-Star Farms</u>, 225 F. Supp. 2d at 578.[10]

Because the Foreign Investors cannot demonstrate that defendants' conduct in the United States was "significant and material" to the alleged fraud, let alone that this conduct directly caused the damages alleged, the Complaint fails to satisfy the conduct test.[11]

### 3.    So-Called "Tipping Factors" Do Not Support Jurisdiction.

Finally, the Foreign Investors attempt to stand the case on its head by arguing that if a United States interest is not sufficient under the judicially-created conduct and effects tests, subject matter jurisdiction still may exist if an additional "tipping factor" is present. (Pl. Br. at 18 (citing <u>Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London</u>, 147 F.3d 118, 129 (2d Cir. 1998) ("<u>EOC</u>"); <u>Gaming Lottery</u>, 58 F. Supp. 2d at 75).) This argument entirely misapprehends the application of so-called "tipping factors." The cases on which the Foreign Investors rely actually hold the opposite – "<u>even when the conduct test is satisfied</u>, 'some <u>additional factor tipping the scales</u> in favor of . . . jurisdiction' sometimes <u>may be required</u>." <u>Gaming Lottery</u>, 58 F. Supp. 2d at 74 (quoting <u>EOC</u>, 147 F.3d at 129) (emphasis added). Thus, the Second Circuit held in <u>EOC</u> that even though plaintiff's allegations satisfied the requirement that the domestic activity directly cause the alleged

---

[10]    The Foreign Investors argue that it is not necessary for the false statement to issue in the United States in order for subject matter jurisdiction to exist. (Pl. Br. at 10.) They rely on <u>SEC v. Berger</u>, 322 F.3d 187, 193 (2d Cir. 2003), in which the SEC alleged securities fraud against a director of an offshore investment fund based in the British Virgin Islands. <u>Id.</u> at 188. The director had created false financial information in the United States, transmitted the false financial information overseas and approved the resulting financial statements before they were sent to investors. <u>Id.</u> at 194. Although the statements that ultimately conveyed the fraudulent information to investors were prepared and mailed in Bermuda, the court held that the preparation and mailing of these inaccurate statements was not, in and of itself, fraudulent. <u>Id.</u> at 195. Because the alleged fraud was "masterminded and implemented by [the defendant] in the United States," the court held that the SEC had sufficiently alleged subject matter jurisdiction. <u>Id.</u> at 194-95. Here, unlike <u>Berger</u>, the alleged fraud was purportedly planned and carried out overseas. (<u>See</u> Compl. ¶ 49.) The alleged false statements were not simply "issued" from Germany, they were purportedly created and conceived in Germany. (<u>See id.</u> ¶¶ 60, 63.)

[11]    Plaintiffs argue that jurisdiction is proper under a combination of the conduct and effects tests. (Pl. Br. at 17.)  Because plaintiffs cannot satisfy either test, they certainly cannot satisfy a combination of the two tests – zero plus zero equals zero.

harm, subject matter jurisdiction was lacking because "the surrounding circumstances show[ed] that no relevant interest of the United States was implicated." 147 F.3d at 129.

Here, as in EOC, "no relevant interest of the United States is implicated," and, therefore, there is no need to examine any so-called "tipping factors." In any event, the "tipping factor" supposedly identified by the Foreign Investors – i.e., that "U.S. parties were harmed" by defendants' alleged fraud – is wholly irrelevant to the issue of whether the Court has subject matter jurisdiction over the claims of those who lack any connection at all to the United States because, as discussed above, all United States interests were addressed fully in the Settlement with the Original Class.[12]

## II.    INTERNATIONAL COMITY AND FOREIGN POLICY FAVOR DISMISSAL.

The Foreign Investors argue that dismissal on the ground of international comity is inappropriate here because there is no "true conflict between domestic and foreign law" and there are no competing foreign proceedings. (Pl. Br. at 19.) This argument fundamentally misconstrues the application of comity to this case.

As explained in defendants' opening brief, international comity comes into play where a United States court may have some basis to extend subject matter jurisdiction to a person or activity having connections to another country, but must still determine whether, given the legitimate sovereign interests of other nations, it would be "reasonable"

---

[12]    The Foreign Investors contend that if the Court determines they have not alleged sufficient facts to establish subject matter jurisdiction, the Court should grant them an opportunity to obtain limited jurisdictional discovery. (See Pl. Br. at 21-22.) They do not, however, give any hint as to where such discovery would be aimed. Indeed, because defendants have challenged the Court's jurisdiction "facially," the Court is confined to considering the allegations set forth in the Complaint. See Davis v. Social Security Admin., No. Civ. A. 02-1595, 2003 WL 21219821, at *1 (D. Del. May 20, 2003). Since facts and documents outside the Complaint are irrelevant to defendants' motion, discovery is unnecessary. Moreover, there is no support for permitting the Foreign Investors to engage in jurisdictional discovery. As the Foreign Investors admit (Pl. Br. at 22 n.17), they are not aware of any case addressing the issue of lifting the PSLRA discovery stay to allow for discovery of facts relevant to subject matter jurisdiction.

to exercise jurisdiction. See F. Hoffman-La Roche, 124 S. Ct. at 2366-67. In F. Hoffman-La Roche, the Supreme Court recently took account of comity concerns in recognizing that the prescriptive jurisdiction of the United States ordinarily will not reach foreign conduct by foreign actors that causes independent foreign harm. Id. Likewise, in Torres v. Southern Peru Copper Corp., 965 F. Supp. 899 (S.D. Tex. 1996), aff'd, 113 F.3d 540 (5th Cir. 1997), the court dismissed an environmental tort action filed against a Peruvian company by Peruvian plaintiffs based on the concept of international comity. Id. at 908-09. Significantly, there were no competing foreign proceedings in either F. Hoffman-La Roche or Torres.[13]

A conflict between foreign and domestic laws is, standing alone, by no means a sine qua non; it is just one of several factors that must be weighed when determining whether the exercise of jurisdiction in a certain case is reasonable. See Restatement (Third) of Foreign Relations Law of the United States: Limitations on Jurisdiction to Prescribe § 403(1) (1987) ("Restatement"); see also Torres, 965 F. Supp. at 908-09. That said, numerous conflicts between United States law and German law exist on issues of vital importance here. As discussed in defendants' opening brief – and conspicuously ignored by the Foreign Investors – Germany has strong objections to certain "controversial features" of United States law, such as "extensive discovery, jury trials, class actions, [and] contingent fees," that directly conflict with German laws. Brief of the Federal Republic of Germany as Amicus Curiae in Support of Petition for Writ of Certiorari, F. Hoffman-La Roche Ltd. v. Empagran, S.A., 124 S. Ct. 2359 (No. 03-724) (2004), available at 2003 WL 22896686, at *8. Every one of these objectionable features of United States law would be implicated in this case.

---

[13]    The Foreign Investors are incorrect in asserting that there were competing foreign proceedings in Torres. (See Pl. Br. at 21.) In a section discussing whether the defendant would be treated fairly in a Peruvian court, the court simply noted that the defendant had been involved in a number of separate and distinct judicial proceedings in Peru. See Torres, 965 F. Supp. at 903.

Finally, the Foreign Investors completely ignore the Restatement factors, used to determine whether the exercise of jurisdiction is "reasonable." As discussed in defendants' opening brief, those factors militate strongly against exercising jurisdiction. (See Def. Br. at 22-23.) As a result, the Court should decline to exercise jurisdiction in this case. See F. Hoffman-La Roche, 124 S. Ct. at 2367-69 (relying, in part, on Restatement Section 403 in determining it would be unreasonable for a United States court to exercise jurisdiction over foreign plaintiffs' Sherman Act claims where the conduct at issue had an independent foreign effect); see also Torres, 965 F. Supp. at 909 (dismissing case on ground of international comity where "[t]he challenged activity and alleged harm occurred entirely in Peru; Plaintiffs [were] all residents of Peru; enforcement in Peru of any judgment rendered by [the District Court] [was] questionable; the challenged conduct [was] regulated by the Republic of Peru and exercise of jurisdiction by [the] Court would interfere with Peru's sovereign right to control its own environment and resources; and the Republic of Peru ha[d] expressed strenuous objection to the exercise of jurisdiction by [the District Court]").

## III.    THE FOREIGN INVESTORS' CLAIMS ARE UNTIMELY.

The Foreign Investors attempt to avoid the fatal effect of the statue of limitations by seeking refuge in the American Pipe tolling doctrine. (See Pl. Br. at 24-25.) However, as the Third Circuit has recently held, although "American Pipe tolling applies to the filing of a new class action where certification was denied in the prior suit based on lead plaintiffs' deficiencies as class representative, . . . American Pipe tolling does not apply where certification was denied based on deficiencies in the purported class itself." Yang, 392 F.3d at 99 (emphasis added). Here, the Court excluded the Foreign Investors from the Original Class based on "deficiencies in the purported class itself," not based on deficiencies

14

of the class representatives. See In re DaimlerChrysler Sec. Litig., 216 F.R.D. 291, 301 (D. Del. 2003) (excluding foreign investors from the class due to the "practical difficulties involved in maintaining a class comprising foreign investors").[14]

Counsel for the Original Class owed a fiduciary duty to all members of the putative class, including the Foreign Investors, and thus had an obligation to advance the interests of all such individuals. If counsel believed the Court "overlooked facts or precedent that reasonably would have altered the [Court's decision to exclude the Foreign Investors from the class]," they could have sought reconsideration of the Court's decision within the prescribed time limit. See N.A.I.F., Inc. v. Snyder, No. Civ. A. 03-506-JJF, 2005 WL 735554, at *1 (D. Del. Mar. 30, 2005). Counsel for the Original Class chose not to do so, and could not do so now and, a fortiori, the Foreign Investors are not now permitted to file a new complaint to do exactly that. See Korwek v. Hunt, 827 F.2d 874, 879 (2d Cir. 1987).

Although the Foreign Investors attempt to characterize the Court's decision as one concerning the adequacy of the class representatives, they are really arguing that the counsel for the Original Class failed to effectively argue the class certification motion. Thus, they contend American Pipe tolling applies because the Court also found that the lead plaintiffs in the Original Class Action did "not adequately respond[] to Defendants' concerns regarding . . . issues of class management and damages suffered by [the Foreign Investors,]." (Pl. Br. at 25 (citing In re DaimlerChrysler, 216 F.R.D. at 301).)

By essentially seeking to reargue this Court's class certification decision in

---

[14]   Compare In re Quarterdeck Office Sys., Inc. Sec. Litig., No. CV-92-3970, 1994 WL 374452, at *5 (C.D. Cal. Mar. 24, 1994) (applying tolling to subsequent class claims where certification in the prior class action was denied because lead plaintiffs were "not proper class representatives"); Shields v. Wash. Bancorp., Civ. A. No. 90-1101, 1992 WL 88004, at *2 (D.D.C. Apr. 7, 1992) (applying tolling to subsequent class claims where certification in the prior class action was denied on the ground that lead plaintiff was an inadequate class representative due to possible conflict of interest).

15

this new action, they are attempting to circumvent the fundamental principle of <u>Korwek</u>, which is that <u>American Pipe</u> does not permit plaintiffs to bring a new action for the purpose of re-litigating the issue of class certification. <u>Korwek</u>, 827 F.2d at 879. As the Second Circuit explained: "[t]he Supreme Court in <u>American Pipe</u> . . . certainly did not intend to afford plaintiffs the opportunity to argue and reargue the question of class certification by filing new but repetitive complaints." <u>Id.</u> The law is clear that the Foreign Investors are simply not entitled to another bite at the apple. <u>See id.</u>; <u>see also</u> <u>Yang</u>, 392 F.3d at 99.

In a last gasp attempt to save their claims, the Foreign Investors argue that "even if the Court's ruling is interpreted to be based on the unmanageability of a class comprising both domestic and foreign investors, tolling would still apply to a subsequently-filed subclass." (Pl. Br. at 26.) The Foreign Investors further argue that they "should be given the opportunity to show that their properly defined subclass is a manageable one." (<u>Id.</u>) These arguments ignore the fact that the Court has already found that a class comprised of foreign investors is <u>not manageable</u>. <u>See DaimlerChrysler</u>, 216 F.R.D. at 301 (excluding foreign investors from the class due to the "practical difficulties involved in maintaining a class comprising foreign investors"). Indeed, this is precisely why the Foreign Investors were carved out of the Original Class. <u>See id.</u> at 300. The Foreign Investors should not be permitted to use the semantic ruse of redefining themselves as a "subclass" to do what they are not permitted to do as a putative "class" – <u>i.e.</u>, reargue the class certification issue already resolved by the Court.

## IV.    THE "MERGER OF EQUALS" ALLEGATIONS FAIL TO STATE A CLAIM.

The gravamen of the Foreign Investors' claims is that the Merger was not a "merger of equals," as described, but rather an undisclosed takeover of Chrysler by Daimler-

Benz. (See Compl. ¶¶ 2, 63-66.) This claim fails as a matter of law because, as the Court recently held, the BCA and the Proxy/Prospectus – the two documents that defined the "merger of equals" – contain no misrepresentations. See Tracinda, 364 F. Supp. 2d at 409. The Court ruled:

> Although the BCA and the Proxy/Prospectus set forth proposals concerning the numbers of individuals on the Management Board and the Supervisory Board from each side of the transaction, those documents do not require the proposed compositions to last for any specific period of time, reiterate that the proposed compositions are initial compositions, state that the proposed compositions are recommendations subject to the rights and approval of the shareholders and the Supervisory Board, and make clear that changes to the corporate governance structure are not barred after consummation of the transaction.

Id.

And, as this Court further held as a matter of law, the term "'merger of equals' is the type of 'promotional phrase' which is devoid of any substantive information, and thus, too vague to be actionable." Id. at 400 (citing Searls v. Glasser, 64 F.3d 1061, 1066 (7th Cir. 1995)).[15] As a result, the Foreign Investors fail to state a claim through their contention that the Merger was not a "merger of equals."

## V.    THE FOREIGN INVESTORS HAVE FAILED TO ALLEGE LOSS CAUSATION SUFFICIENTLY.

As the Supreme Court recently explained in Dura – a case decided after defendants filed their opening brief – the PSLRA "expressly imposes on plaintiffs 'the burden of proving' that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover.'" 125 S. Ct. at 1633 (quoting 15 U.S.C. § 78u-4(b)(4)). And, sounding the

---

[15]    Pursuant to the doctrine of stare decisis, this Court's rulings of law in the Tracinda action are dispositive here. See, e.g., Robbins v. Amoco Prod. Co., 952 F.2d 901, 904 (5th Cir. 1992) ("Because the interpretation of the unambiguous terms of a contract is purely a question of law . . . stare decisis dictates that the decision in [the earlier case] must govern [in any subsequent] case [involving the same document].")

death knell for the Foreign Investors' argument that the question of whether they can demonstrate loss causation should be reserved for the trier of fact (Pl. Br. at 28), the Supreme Court also held that loss causation must be sufficiently pled in order for a case to proceed, and that this issue can be decided on a dismissal motion. See Dura, 125 S. Ct. at 1634.

Under Dura, securities fraud plaintiffs cannot adequately plead loss causation simply by alleging that they purchased securities at artificially inflated prices. See id. at 1631 ("Normally, in cases such as this one (i.e., fraud-on-the-market cases), an inflated purchase price will not itself constitute or proximately cause the relevant economic loss. . . . [I]f, say, the purchaser sells the shares quickly before the relevant truth begins to leak out [through a corrective disclosure], the misrepresentation will not have led to any loss."). As the Supreme Court reasoned, "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the casual connection that the plaintiff has in mind." Id. at 1634.

Here, the Acquirors' claims fail as a matter of law because they have not adequately pled loss causation. The Foreign Investors allege that the October 30, 2000 Financial Times article "reported, for the first time, quoting defendant Schrempp as stating that the Merger of Daimler-Benz and Chrysler was never intended to be a merger-of-equals, and that Defendants had lied to get the deal approved by Chrysler shareholders." (Compl. ¶ 88.) This alleged admission is fatal to their ability to show "loss causation" because it cannot be disputed that in the days immediately following the publication of this alleged disclosure, the market price of DaimlerChrysler stock actually rose. (See Def. Br. at 33.) Because the price of the stock did not decline (and actually increased) in the wake of this disclosure, the Foreign Investors cannot prove their "losses," if any, were attributable to the

18

alleged fraud. See Dura, 125 S. Ct. at 1634 (affirming dismissal where, inter alia, complaint failed to allege that "Dura's share price fell significantly after the truth became known").

The Foreign Investors attempt to circumvent Dura's requirement that a securities fraud complaint sufficiently allege loss causation by arguing that although defendants "began to disclose" the alleged fraud with the publication of the Financial Times article on October 30, 2000 (Compl. ¶ 88), the "complete nature of the alleged fraud" was not revealed until November 17, 2000. (Pl. Br. at 28.) This argument can be rejected outright.

It cannot be disputed that the focus of the instant Complaint (as well as each of the previous complaints arising out of the same subject matter on which it is based) is on Mr. Schrempp's alleged "admission" of fraud in the October 30, 2000 Financial Times article. (See Compl. ¶¶ 5, 88.) And by its very nature, the Foreign Investors' "merger of equals" claim is an all-or-nothing proposition – either the Merger was a merger of equals or it was not. The "truth" about this could not be dribbled out over time in the manner that a more complex alleged fraud – such as financial statement fraud revealed over time through disclosures of discrete and independent accounting irregularities – might be. The Foreign Investors even allege that Mr. Schrempp admitted in the Financial Times article that the Merger "was never intended to be a merger-of-equals." (Id. at ¶ 88.) Their attempt to disclaim this allegation and argue that the article only partly revealed the alleged fraud is pure legerdemain.

Moreover, the November 17, 2000 announcement the Foreign Investors now claim completed the disclosure of the fraud is not revealing of any fraud, but rather of disastrous financial results that led to a change in the leadership of the Chrysler group. (Id.

at ¶¶ 90, 92.) Significantly, the Complaint made the November 17, 2000 announcement the backbone of the Foreign Investors' now-abandoned "channel stuffing" claim – not the "merger of equals" claims. (See id. at ¶ 93 (stating that on November 17, 2000, the Foreign Investors "came to realize for the first time . . . that these disappointing financial results were the direct result of Defendants' illegal scheme to artificially inflate revenues and earnings [through the practice of channel stuffing]").)[16]

Because the Foreign Investor's have failed to sufficiently allege loss causation, the Acquirors' claims fail as a matter of law. See Dura, 125 S. Ct. at 1633-34.

### CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the defendants' opening brief, DaimlerChrysler and Daimler-Benz respectfully request that the Court grant their motion and dismiss the Complaint in its entirety and with prejudice.

Dated: June 2, 2005

OF COUNSEL:
Jonathan J. Lerner
Lea Haber Kuck
Joseph N. Sacca
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

By:  /s/ Robert S. Saunders
Thomas J. Allingham II (#0476)
Robert S. Saunders (#3027)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Defendants DaimlerChrysler
AG and Daimler-Benz AG

---

[16]    Evidently having only just realized that the "channel stuffing" claim they lifted wholesale from the complaint filed by the Original Class was dismissed by the Court for reasons equally applicable here, the Foreign Investors now state that their "channel stuffing" allegations "were intended merely as background" and they do not seek recovery based on these claims. (Pl. Br. at 6 n.5.)