IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARKUS BLECHNER, CAPITAL INVEST,  :
DIE KAPITALANLAGEGESELLSCHAFT DER :
BANK AUSTRIA CREDITANSTALT GRUPPE :
GmbH, and ERSTE-SPARINVEST        :
KAPITALANLAGEGESELLSCHAFT, m.b.H.,:
individually and on behalf of all :
others similarly situated,        :
                                  :
          Plaintiffs,              :
                                  :
     v.                            : Civil Action No. 04-331-JJF
                                  :
DAIMLER-BENZ AG, DAIMLER CHRYSLER :
AG, JURGEN E. SCHREMPP, ECKHARD   :
CORDES, MANFRED GENTZ, JURGEN     :
HUBBERT, MANFRED BISCHOFF, KURT   :
LAUK, KLAUS MANGOLD, HEINER       :
TROPITZCH, KLAUS-DIETER VOHRINGER,:
DIETER ZETSCHE, and THOMAS        :
SONNENBERG,                       :
                                  :
          Defendants.              :

Seth D. Rigrodsky, Esquire, of
MILBERG WEISS BERSHAD & SCHULMAN, Wilmington, Delaware.
Attorney for Plaintiffs Markus Blechner and Capital Invest, die
Kapitalanlagegesellschaft der Bank Austria Creditanstalt Gruppe
GmbH.

Gary F. Traynor, Esquire, of
PRICKETT, JONES & ELLIOT, P.A., Wilmington, Delaware.
Attorney for Plaintiff Erste-Sparinvest Kapitalanlagegesellschaft
m.b.H.

Michael A. Barlow, Esquire of
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, Wilmington, Delaware.
Attorney for Defendants.

## OPINION

January 24, 2006
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is the Motion Of Defendants DaimlerChrysler AG And Daimler-Benz AG To Dismiss The Complaint (D.I. 51). For the reasons discussed, the Motion will be granted.

I.   **Factual Background**

The following facts are alleged in Plaintiffs' Complaint. In November 1998, Chrysler and Daimler-Benz merged to form DaimlerChrysler, a German corporation. (D.I. 1 at 2). Defendants, in order to secure shareholder approval, identified this merger as a "merger-of-equals," rather than as an acquisition. Id. As a part of the merger-of-equals, shareholders were allegedly promised that control would be shared by managers from both companies and that the joining of the companies was merely to "further ensuring greater synergies, cost savings and spirited cooperative enthusiasm." Id.

Plaintiffs contend that the "merger-of-equals" was in fact an acquisition and that Defendants never intended there to be a merger-of-equals. Plaintiffs contend that on November 17, 2000, shareholders discovered that all Chrysler senior managers had been removed from the Management Board and replaced with Daimler-Benz employees. (D.I. 1 at 3-4). Plaintiffs assert that on November 17, 2000, shares of DaimlerChrysler dropped $5.00 per share, representing a market capitalization loss of over $5

1

billion. (D.I. 1 at 4).

On May 24, 2004, Plaintiffs filed a Complaint individually and on behalf of all others similarly situated

> who are <u>not citizens or residents of the United States</u> ("Foreign Investors") who purchased or otherwise acquired the securities of DaimlerChrysler AG ("Daimler Chrysler" or the "Company") between November 17, 1998 and November 17, 2000..., including those former shareholders of Chrysler Corporation ("Chrysler") who surrendered their Chrysler shares in connection with the merger of Chrysler by and into the Company on or about November 17, 1998, <u>on or through a securities exchange not based in the United States</u>.

(D.I. 1 at 1)(emphasis added). The Complaint alleges violations of § 14(a) of the Securities and Exchange Act of 1934 ("Exchange Act"), § 11 of the Exchange Act, and § 12(a)(2) of the Securities Act of 1933 ("Securities Act") against all Defendants. (D.I. 1). Plaintiffs further allege that Defendants Daimler-Benz, DaimlerChrysler, Schrempp, and Gentz violated § 10(b) of the Exchange Act, that Defendants Schrempp and Gentz violated § 20(a) of the Exchange Act, and that all individual Defendants violated § 15 of the Securities Act. <u>Id</u>.

Plaintiffs allege that because the "merger-of-equals" was in fact an acquisition, they were denied the payment of a control premium, and thus, received inadequate consideration in the merger. (D.I. 1 at 2). Plaintiffs also allege that investors were misled as to the risks of investing in DaimlerChrysler because the investors believed that the creation of

2

DaimlerChrysler was a merger-of-equals. Id. at 4. Finally, Plaintiffs allege that Defendants "artificially inflated [DaimlerChrysler's] revenues and earnings and understated costs, in order to create the appearance that the Company was achieving the growth, synergies and cost savings promised by Defendants." Id.

On March 1, 2005, Defendants DaimlerChrysler and Daimler-Benz filed the instant Motion To Dismiss (D.I. 51).

## II. Parties' Contentions

By their Motion, Defendants contend that the Court lacks subject matter jurisdiction because federal securities laws do not grant extraterritorial jurisdiction over Plaintiffs' claims, or alternatively, that the Court should not hear the case due to considerations of international comity and foreign policy. Defendants further contend that the investors' claims are barred by the statute of limitations and that even if the claims are not time-barred, Plaintiffs have failed to state a claim for which relief can be granted under Rule 12(b)(6).

In response, Plaintiffs contend that the Court should hear the case, first, because the Complaint alleges sufficient conduct occurring in the United States to warrant the exercise of jurisdiction, and second, because international comity and foreign policy do not favor dismissal. Plaintiffs further contend that the asserted claims are not barred by the statute of

3

limitations and that a claim has been stated for which relief may be granted under federal securities laws.

**III. Discussion**

The Court of Appeals for the Third Circuit has only considered the extraterritorial reach of the federal securities laws twice and has not ruled on the question since its decision in Kasser in 1977. Tri-Star Farms Ltd. v. Marconi, 225 F. Supp. 2d 567, 574 (W.D. Pa. 2002). See SEC v. Kasser, 548 F.2d 109 (3d Cir. 1977); see also Straub v. Vaisman & Co., 540 F.2d 591 (3d Cir. 1976). Thus, the Court will examine several sources to determine whether the exercise of jurisdiction is appropriate in this case: a general canon of statutory interpretation, the Third Restatement of Foreign Relations, two relevant cases decided by the Third Circuit, the conduct and effects tests used by other circuits and recently applied by the Western District of Pennsylvania, case law concerning extraterritorial application in class actions, and Second Circuit case law cited by the parties.

    A.   <u>General Canon Of Statutory Interpretation Against The Extraterritorial Application Of Laws</u>

Unless Congress has expressed intent otherwise, courts should avoid the extraterritorial application of laws. W. Barton Patterson, Defining the Reach of the Securities Exchange Act: Extraterritorial Application of the Anti-Fraud Provisions, 74 Fordham L. Rev. 213, 221 (2005)(citing Sale v. Haitian Ctrs. Council, Inc., 509 U.S. 155 (1993); EEOC v. Arabian Am. Oil Co.,

4

499 U.S. 244 (1991); Foley Bros., Inc. v. Filardo, 336 U.S. 281 (1949)). "This canon of construction is a valid approach whereby unexpressed congressional intent may be ascertained. It serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." Asplundh Tree Expert Co. v. NLRB, 365 F.3d 168, 173 (3d Cir. 2004)(citations omitted).

The Court concludes that the general canon of statutory interpretation against the extraterritorial application of laws weighs against the exercise of jurisdiction in this case. The securities laws are silent as to extraterritorial application, and thus, Congress has not expressed an intent for them to apply extraterritorially. SEC v. Berger, 322 F.3d 187, 192 (2d Cir. 2002). Thus, in order to protect against a clash with another nation's laws as discussed in Asplundh Tree Expert Co., in this case most probably the laws of Germany, the Court concludes that it should decline to exercise jurisdiction over this matter.

B.   Third Restatement Of Foreign Relations

In addition to the canon of statutory interpretation discussed above, the Court finds the Third Restatement Of Foreign Relations ("the Restatement") helpful in resolving the issue of whether the Court's exercise of jurisdiction is appropriate in a case concerning a predominantly foreign transaction. Section 402 of the Restatement generally outlines the ways in which a nation

may prescribe a law and specifically teaches that it is subject to § 403, which prohibits the exercise of jurisdiction where it is unreasonable and provides several factors to consider in determining reasonableness. Restatement (Third) of Foreign Relations §§ 402-03 (2005). The jurisdiction to prescribe laws specifically related to securities is provided in § 416, which provides in pertinent part:

> (1) The United States may generally exercise jurisdiction to prescribe with respect to...
>  (d) conduct occurring predominantly in the United States that is related to a transaction in securities, even if the transaction takes place outside the United States; or
>  (e) investment advice or solicitation of proxies or of consents with respect to securities, carried out predominantly in the United States.
> (2) Whether the United States may exercise jurisdiction to prescribe with respect to transactions or conduct other than those addressed in Subsection (1) depends on whether such exercise of jurisdiction is reasonable in the light of § 403, in particular
>  (a) whether the transaction or conduct has, or can reasonably be expected to have, a substantial effect on a securities market in the United States for securities of the same issuer or on holdings in such securities by United States nationals or residents;
>  (b) whether representations are made or negotiations are conducted in the United States;
>  (c) whether the party sought to be subjected to the jurisdiction of the United States is a United States national or resident, or the persons sought to be protected are United States nationals or residents.

Restatement (Third) of Foreign Relations § 416 (2005).

After considering the principles taught by the Restatement,

6

the Court concludes that the jurisprudence of the Restatement weighs against the exercise of the Court's jurisdiction in this case. The conduct asserted in the Complaint did not occur predominantly in the United States; it occurred primarily in Germany. Additionally, while the acquired corporation was an American corporation and while some of the shareholders whose solicitation was sought were American or residing in the United States, the case before the Court concerns those shareholders who have no connection to the United States and who did not surrender their shares to an American market.

The Court also concludes that it would not be reasonable under Restatement §§ 403 and 416 for the Court to exercise jurisdiction in this case. The outcome in this case will not affect American investors or markets. Also, while some negotiations may have occurred in the United States, Plaintiffs, the putative class, and Defendants are not American nationals or residents. Finally, the Court recognizes that there may be conflicts between the laws of the United States and different nations, and other nations may have a greater interest in regulating the people and activities within their borders. Accordingly, the Court concludes that the Restatement does not support the exercise of the Court's jurisdiction over this matter.

C.  Third Circuit Case Law

There are two cases in which the Third Circuit has addressed the question of the extent to which extraterritorial jurisdiction reaches under federal securities laws, Kasser and Straub. The Court will examine each of these cases.

In Kasser, the Securities and Exchange Commission ("SEC") sought to invoke the jurisdiction of the federal courts in a case against American defendants that allegedly defrauded a Canadian company. Kasser, 548 F.2d 109. The district court concluded that it lacked jurisdiction because "conduct without [an] effect is insufficient for jurisdiction to attach." Id. at 112. The Third Circuit rejected this conclusion, stating that conduct without effect was sufficient to confer jurisdiction and that the court, under the facts alleged, had subject matter jurisdiction over the claims. Id. at 113-14. In reaching its decision, the Third Circuit took into account several policy considerations, including whether a decision not to grant jurisdiction would embolden defrauders and manipulators in the United States, the desire to have other nations respond reciprocally to fraud affecting their securities markets, and the goal in the law of protecting domestic investors and markets from fraud. Id. at 116. The court also took into account the many activities of the American defendants in the United States, including negotiating and executing contracts, incorporating and establishing corporate

offices, maintaining books and records, drafting documents, and transmitting proceeds. Id. at 111-12. Given the policy considerations and the amount of activity that took place in the United States, the Third Circuit concluded that "Congress [could not have intended] to allow the United States to be used as a base for manufacturing fraudulent securities devices for export, even when these are peddled only to foreigners." Id. at 114 (quoting IIT v. Vencap, Ltd., 519 F.2d 1001, 1017 (2d Cir. 1975)). On these facts, the Third Circuit refused to "immunize, for strictly jurisdictional reasons, defendants who unleash from this country a pervasive scheme to defraud a foreign corporation... especially ...where the corporation is owned by a foreign governmental subdivision of a neighboring nation." Kasser, 548 F.2d at 114.

In Straub, a securities action was brought by several foreign plaintiffs against the president of an American securities brokerage for violations of federal securities laws. Straub, 540 F.2d 591. Concluding that it was not "faced with a predominantly foreign transaction," the Third Circuit did not elaborate on the transnational scope of the federal securities laws. Id. at 595. Rather, the Third Circuit emphasized the policy considerations of regulating American brokers and building confidence in the American securities market. With these considerations in mind, the Third Circuit concluded that it had

jurisdiction to hear the foreign plaintiffs' claims because "[t]he fraudulent scheme was conceived in the United States by American citizens, involved stock in an American corporation traded on [an] American over-the-counter exchange, and an American securities broker from his office in New Jersey was responsible for the wrongful omissions." Id.

Relying on Straub, Plaintiffs argue that the Complaint demonstrates that the "'center of gravity' of the alleged fraud was in the United States." (D.I. 56 at 8). According to Plaintiffs:

> Defendants' entire scheme revolved around its merger with a bell-whether [sic] American company; the combined entity claims to have headquarters in this country and does a substantial amount of business here; the fraud was intended to induce the largely American shareholders of the American Chrysler corporation to tender their shares; and the fraud was effected through Defendants' actions to dismantle the American company's management structure.

Id. Plaintiffs also argue that "most crucially" the Registration Statement/Proxy-Prospectus, filed with the SEC, was drafted jointly in the United States and Germany and the merger was to be governed by Delaware law. Id. at 9. Plaintiffs also direct the Court to the statement in Kasser that "the federal securities laws do grant jurisdiction in transnational securities cases where at least some activity designed to further a fraudulent scheme occurs within this country." Kasser, 548 F.2d at 114.

The Court, however, is not persuaded that either Kasser or

10

Straub supports the Court's exercise of jurisdiction in this case. Unlike Kasser, the case at bar does not involve a lawsuit by the SEC against American defendants regarding an alleged scheme "unleashed" from the United States. Although the Kasser court recognized that the securities laws grant jurisdiction in transnational cases where some activity to further a fraudulent scheme occurs in the United States, "language elsewhere in Kasser indicates that the level of domestic conduct, at the very least, must be significant and material to the fraud. 'Merely preparatory' or insubstantial conduct is not enough." Tri-Star Farms, Ltd., 225 F. Supp. 2d at 115 (quoting Kasser, 548 F.2d at 115). In this case, "conduct occurring within the borders of [the United States] was [not] essential to the plan to defraud." Kasser, 548 F.2d at 115. While the company acquired was an American corporation and while many of the alleged victims of the fraud were American, the instant case involves the alleged defrauding of foreign investors who exchanged on foreign markets. The alleged fraud took place in Germany and was allegedly perpetrated by Daimler-Benz, a German corporation, and its controlling managers. Further, the number of transactions within the United States was limited.

As for Straub, the Court likewise concludes that the circumstances here are distinguishable. In Straub, the defendant was an American; in this case, all the parties are foreign.

Here, the concern is not the integrity of American brokers or the American securities market. Rather, the Court is presented with a predominantly foreign transaction, which concerns foreign security markets and a German corporation. In these circumstances, the Court concludes that neither <u>Kasser</u> nor <u>Straub</u> suggests requires the Court to exercise jurisdiction.

Further, the Court believes that the refusal to exercise jurisdiction over this case is consistent not only with the analyses of <u>Kasser</u> and <u>Straub</u>, but also with the policy considerations set forth in those cases. A decision that the Court should not exercise jurisdiction in this case will not embolden defrauders and manipulators to use the United States as a base of operations. The alleged defrauders and manipulators in this case are German, and the amount of activity that took place in the United States is minimal. Thus, there is very little deterrent value supporting the exercise of the Court's jurisdiction. Similarly, because the investors, and the markets to which they surrendered their shares, are foreign, exercising jurisdiction over this case would do little to protect domestic investors or markets or to build trust in American brokers. Finally, if the Court were to exercise jurisdiction it could cause other countries to reciprocate by exercising jurisdiction in cases concerning primarily American parties and interests. <u>Plessey Co. plc v. Gen. Elec. Co. plc</u>, 628 F. Supp. 477, 496 (D.

Del. 1986) (discussing how the reciprocal response policy discussed in <u>Kasser</u> could actually work to the United States' disadvantage). Accordingly, the Court concludes that Third Circuit case law does not support the exercise of the Court's jurisdiction in this case.

   D.   <u>The Conduct And Effects Tests</u>

Courts considering the extent of the courts' jurisdiction in securities cases have also used the conduct and effects tests to determine whether extraterritorial jurisdiction is appropriate. Under the conduct test, a court "asks whether the fraudulent conduct that formed the alleged violation occurred in the United States." <u>Robinson v. TCI/U.S. W. Comms. Inc.</u>, 117 F.3d 900, 905 (5th Cir. 1997). <u>See</u> <u>also</u> <u>Leasco Data Processing Equip. Corp. v. Maxwell</u>, 468 F.2d 1326, 1336-37 (2d Cir. 1972). Under the effects test a court "asks whether conduct outside the United States has had a substantial adverse effect on American investors or securities markets." <u>Robinson</u>, 117 F.3d at 905. <u>See</u> <u>also</u> <u>Schoenbaum v. Firstbrook</u>, 405 F. 2d 200, 206 (2d Cir. 1968). Jurisdiction can be established by meeting either test. <u>Robinson</u>, 117 F.3d at 905.

The Western District of Pennsylvania recently utilized the conduct and effects tests.[1] In a case similar to the one at bar,

---

[1] The Court notes that the District Court of New Jersey decided a case on this issue after the parties had filed their papers relevant to the instant Motion. <u>In re Royal Dutch/Shell</u>

13

the court concluded that it lacked jurisdiction to hear the claims of foreign plaintiffs that alleged violations of the Exchange and Securities Acts. Tri-Star Farms, 225 F. Supp. 2d 567. The case had been split, allowing the American plaintiffs and plaintiffs who had purchased stock on an American market to go forward with their claims, while the court considered whether it had jurisdiction over the claims of foreign plaintiffs that had purchased stock on foreign markets. Id. at 517 n.6.

In analyzing the jurisdiction question, the Tri-Star Farms court concluded that "the United States-based conduct in Straub and Kasser was so extensive that jurisdiction was likely proper under any standard." Id. at 576. As a result, the court looked to other courts for its analysis and applied the conduct and effects tests. Id. at 573 (citing Robinson, 117 F.3d at 905). The court concluded that the plaintiffs did not meet the effects test because the investors were not American, they did not use an American exchange, and they did not suffer any effects of the alleged wrongful conduct in the United States. Tri-Star Farms, 225 F. Supp. 2d at 572-73. Also, after considering what degree of conduct would be required, the court concluded that plaintiffs did not meet the conduct test because the plaintiffs' claims

---

Transp. Sec. Litig., 380 F. Supp. 2d 509 (D.N.J. 2005). While the district court concluded that it had jurisdiction, the Court finds Tri-Star Farms more persuasive, particularly in light of the differences between this case and the Third Circuit's decisions in Kasser and Straub.

14

involved conduct that primarily took place in the United Kingdom, and thus, the activity that occurred in the United States was not substantial enough to provide jurisdiction over the claims. Id. at 576-78. Accordingly, the court concluded that it lacked jurisdiction to hear the claims of the foreign plaintiffs.

The Court finds the decision in Tri-Star Farms persuasive and concludes that application of the conduct and effects tests in this case weighs against the exercise of the Court's jurisdiction. The Court finds that Plaintiffs' Complaint fails to meet the effects test for the same reasons the plaintiffs' failed in Tri-Star Farms. Specifically, the investors are not American, did not use an American exchange, and did not suffer any effects of the alleged wrongful conduct in the United States. The Court also finds that Plaintiffs' Complaint fails under the conduct test because, as discussed above, the conduct that comprises Plaintiffs' claims occurred predominantly outside the United States. Accordingly, the Court concludes that the conduct and effects tests do not support a finding of jurisdiction in this case.

    E.    Extraterritorial Application Of Federal Securities Laws In Class Actions

This case is presented to the Court as a potential class action involving foreign parties entirely, which may present problems, not only with finality and enforcement, but also with the pendency of the case. In Tri-Star Farms, the court commented

that class action lawsuits present problems in the exercise of extraterritorial jurisdiction and noted that neither <u>Straub</u> nor <u>Kasser</u> involved a class action lawsuit. <u>Tri-Star Farms</u>, 225 F. Supp. 2d at 577. Class actions may require different treatment from cases in which there are individual plaintiffs due to "the likelihood that a very small tail may be wagging an elephant and...the doubt that a judgment of an American court would protect the defendants elsewhere." <u>IIT</u>, 519 F.2d at 1018 n.31. Accordingly, the Court declines to exercise jurisdiction for the additional reason that this action is presented as a potential class action.

    F.    <u>Second Circuit Case Law</u>

In addition to Third Circuit case law, Plaintiffs also cite cases from the Second Circuit to support their argument that the Court has jurisdiction over their claims. While the Third Circuit has looked to Second Circuit case law in its discussions of the extraterritorial application of federal securities laws, the cases Plaintiffs cite present circumstances which are different from the circumstances here. <u>See</u> <u>Kasser</u>, 548 F.2d 109; <u>Straub</u>, 540 F.2d 591; <u>Plessey</u>, 628 F. Supp. 477; <u>Tri-Star Farms</u>, 225 F. Supp. 2d 567. At least one of the cases cited by Plaintiffs is not a class action. <u>See Itoba Ltd. v. Lep Group, PLC</u>, 54 F.3d 118, 123 (2d Cir. 1995)(distinguishing that case from <u>Nathan Gordon Trust v. Northgate Exploration, Ltd.</u>, 148

16

F.R.D. 105 (S.D.N.Y 1993), finding that "the instant case involves a single plaintiff asserting direct individual fraud" and not a class action discretionarily divided for purposes of extraterritorial jurisdiction). Other cases Plaintiffs cite involve parties that are located in the United States. See SEC v. Berger, 322 F.3d 187 (defendant located in the United States); Cromer Fin. v. Berger, 137 F. Supp. 2d 452 (S.D.N.Y. 2001); In re Vivendi Universal, 2004 U.S. Dist. LEXIS 21230 (S.D.N.Y 2004) (agents of defendant located in and operating out of the United States). Additionally, some of the cases to which Plaintiffs refer involve exchanges on American markets. See Leonard v. Garantia Banking Ltd., No. 98 Civ. 4848, 1999 U.S. Dist. LEXIS 16046 (S.D.N.Y. Oct. 18, 1999)(trading occurred on the NYSE); Sloane Overseas Fund Ltd. v. Sapiens Int'l Corp., 941 F. Supp. 1369, 1374 (S.D.N.Y. 1996) (trading occurred on the NASDAQ). Finally, some of these cases involve a greater amount of conduct occurring in the United States. See In re Gaming Lottery Sec. Litig., 58 F. Supp. 2d 62 (S.D.N.Y. 1999) (acquisition of Washington corporation where defendant conducted alleged illegal activities in addition to the purposeful deception of a Washington state agency led to a finding of jurisdiction). Accordingly, the Court finds the Second Circuit cases cited by Plaintiffs are distinguishable from the circumstances in this case, and therefore, the Court concludes that the Second Circuit

17

decisions do not support the exercise of the Court's jurisdiction.

## IV. Conclusion

In sum, for the reasons discussed, the Court concludes that the exercise of jurisdiction over this case is inappropriate, and therefore, the Court will grant the Motion Of Defendants DaimlerChrysler AG And Daimler-Benz AG To Dismiss The Complaint (D.I. 51).

An appropriate Order will be entered.